1   Armstrong Teasdale LLP
    JANET L. CHUBB, ESQ.
2   Nevada State Bar No. 176
    LOUIS M. BUBALA III, ESQ.
3   Nevada State Bar No. 8974
    50 West Liberty, Suite 950
4   Reno, NV 89501
    (775) 322-7400 (Telephone)
5   (775) 322-9049 (Facsimile)
    jchubb@armstrongteasdale.com
6   lbubala@armstrongteasdale.com

7   and

8   ARENT FOX LLP
    ANDREW I. SILFEN, ESQ.
9   (*Admitted Pro Hac Vice*)
    1675 Broadway
10  New York, NY 10019
    silfen.andrew@arentfox.com
11  (212) 484-3900 (Telephone)
    (212) 484-3990 (Facsimile)
12
    NANCY S. HEERMANS, ESQ.
13  (*Admitted Pro Hac Vice*)
    JEFFREY N. ROTHLEDER, ESQ.
14  (*Admitted Pro Hac Vice*)
    1050 Connecticut Ave., N.W.
15  Washington, DC 20036
    heermans.nancy@arentfox.com
16  rothleder.jeffrey@arentfox.com
    (202) 857-6000 (Telephone)
17  (202) 857-6395 (Facsimile)

18  *Attorneys for Wilmington Trust Company, solely in its*
    *capacities as Indenture Trustee, Delaware Trustee,*
19  *Institutional Trustee, Property Trustee and Guarantee*
    *Trustee*
20

21

22                          ***[Caption on following page]***

23

24

25

26

27

28

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| **IN RE:** | **CHAPTER 7** |
| **SILVER STATE BANCORP.,** | **CASE NO. 09-10069-BAM** |
| **DEBTOR.** | **HON. BRUCE A. MARKELL** |
| **FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR SILVER STATE BANK,** | **ADV. PROC. NO. 10-01444-BAM** |
| | **HEARING DATE:   MAY 24, 2011** |
| **PLAINTIFF,** | **HEARING TIME:  11:00 A.M.** |
| **v.** | |
| **JAMES F. LISOWSKI, SR., INDIVIDUAL AND AS CHAPTER 7 TRUSTEE,** *et al.*, | |
| **DEFENDANTS.** | |

**WILMINGTON TRUST COMPANY, SOLELY IN ITS CAPACITIES AS INDENTURE TRUSTEE, DELAWARE TRUSTEE, PROPERTY TRUSTEE, INSTITUTIONAL TRUSTEE AND GUARANTEE TRUSTEE UNDER FOUR SERIES OF TOPrS TRUST DOCUMENTS, MOTION TO DISMISS THE FDIC-R'S FIRST AMENDED COMPLAINT AS TO COUNTS II, III, AND PART OF COUNT I WITH RESPECT TO THE 2006 TAX REFUND AND FIRST DISTRIBUTION AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Defendant Wilmington Trust Company, solely in its capacities as Indenture Trustee, Delaware Trustee, Institutional Trustee, Property Trustee and Guarantee Trustee under the Trust Documents (defined below) with respect to four series of TOPrS Trusts ("Wilmington Trust" or "TOPrS Trustee"),[1] by and through its undersigned counsel, respectfully submits this Motion to Dismiss (the "Motion" or "Motion to Dismiss") Counts II, III, and that part of Count I concerning the 2006 Tax Refund and the First Distribution (defined below) of the First Amended Complaint [Docket No. 205] (the "Complaint"), which was filed by Plaintiff Federal Deposit Insurance

---

[1] As more particularly described herein, Wilmington Trust acts as four separate TOPrS Trustees under four distinct sets of Trust Documents (defined below).  For purposes of this Motion to Dismiss, and the convenience of the Court, Wilmington Trust, in each of its separate and distinct capacities will be referred to as either "Wilmington Trust" or the "TOPrS Trustee," unless context dictates otherwise.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

NYC/573676.3                                        - 2 -

Corporation, as Receiver for Silver State Bank ("the FDIC-R").[2]  This Motion is based upon the attached Memorandum of Points and Authorities, as well as other papers, pleadings, and documents on file herein.

    DATED:  March 24, 2011

                                          ARMSTRONG TEASDALE
                                          Janet L. Chubb
                                          Louis M. Bubala III
                                          50 West Liberty
                                          Suite 950
                                          Reno, Nevada 89501
                                          jchubb@armstrongteasdale.com
                                          lbubala@armstrongteasdale.com
                                          (775) 322-7400 (Telephone)
                                          (775) 322-9049 (Facsimile)

                                          -and-

                                          By: _/s/ Andrew I. Silfen_____
                                          ARENT FOX LLP
                                          Andrew I. Silfen, Esq.
                                          (*Admitted Pro Hac Vice*)
                                          1675 Broadway
                                          New York, NY 10019
                                          (212) 484-3900 (Telephone)
                                          silfen.andrew@arentfox.com

                                          -and-

                                          Nancy S. Heermans, Esq.
                                          (*Admitted Pro Hac Vice*)
                                          Jeffrey N. Rothleder, Esq.
                                          (*Admitted Pro Hac Vice*)
                                          1050 Connecticut Ave., N.W.
                                          Washington, DC 20036
                                          (202) 857-6000 (Telephone)
                                          heermans.nancy@arentfox.com
                                          rothleder.jeffrey@arentfox.com

                                          *Attorneys for Wilmington Trust Company,*
                                          *solely in its capacities as Indenture Trustee,*
                                          *Delaware Trustee, Institutional Trustee,*
                                          *Property Trustee and Guarantee Trustee for*
                                          *Four Series of TOPrS Trusts*

---

[2] Capitalized terms used but not defined in this Motion to Dismiss will have the meaning set forth in the Amended Complaint.

1

2

## **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND ....................................................................................... 3

  I.   THE TRUST STRUCTURES AND TRANSACTIONAL DOCUMENTS........................ 3

      A.  The Trust II Documents .................................................................... 4
      B.  Three Additional Series Of Trust Documents................................. 5
      C.  Distributions And Payments To The TOPrS Holders ..................... 6

  II.  THE FAILURE OF SILVER STATE BANK
      AND THE COMMENCEMENT OF THE BANKRUPTCY CASE ................................ 7

      A.  The Bankruptcy Case ...................................................................... 7
      B.  TOPrS Claims .................................................................................. 8

  III.  THE FIRST DISTRIBUTION MOTION ................................................................ 9

  IV.  THE FDIC-R'S DISGORGEMENT MOTION AND SUBSEQUENT COMPLAINT ..... 10

ARGUMENT .............................................................................................................. 10

  I.   THE FDIC-R'S CLAIMS FOR RELIEF AS TO THE
      2006 TAX REFUND AND THE FIRST DISTRIBUTION
      FAIL TO STATE A VIABLE CLAIM FOR RELIEF ............................................. 12

      A.  The Adversary Proceeding As To The 2006 Tax Refund And
          First Distribution Is Barred By The Doctrine Of Res Judicata (Claim Preclusion) ..... 12

      B.  The FDIC-R Is Bound By The First Distribution Order ............................ 16
         i.   The FDIC-R Is Not Entitled To Relief Under Rule 60(b) .................... 16

            a.  The FDIC-R Cannot Avoid The Consequences
               Of Electing To Do Nothing With Respect To
               The First Distribution Motion Of Which It Had Actual Notice ..................... 16

            b.  The Trustee Properly Served The FDIC-R
               With The First Distribution Motion ................................................. 17

            c.  The FDIC-R Failed To Plead Extraordinary  Circumstances
               That Would Warrant Disruption  Of The First Distribution Order ................. 19

         ii.  The FDIC-R Has Not Met Its Burden To Sustain
            An Independent Action Under Rule 60(d) ........................................ 20

  II.  THE DOCTRINE OF EQUITABLE MOOTNESS REQUIRES
      DISMISSAL OF THE COMPLAINT AGAINST THE TOPrS
      TRUSTEE AS TO THE 2006 TAX REFUND AND THE FIRST DISTRIBUTION ........ 22

  III.  THE FDIC-R FAILS TO STATE A CLAIM
       FOR MANDATORY INJUNCTIVE RELIEF ........................................................ 23

RESERVATION OF RIGHTS .................................................................................... 25

CONCLUSION ........................................................................................................... 25

NYC/573676.3

1

2

**TABLE OF AUTHORITIES**

3

C̲ASES̲

*Ackermann v. United States*, 340 U.S. 193 (1950) ---------------------------------------------------19

*Alabama v. United States*, 304 F.2d 583 (5th Cir.),
   *aff'd*, 371 U.S. 37 (1962) ----------------------------------------------------------------------------24

*Aldridge v. United States Dep't of Veterans' Affairs*,
   No. CV-N-04-0016, 2004 U.S. Dist. LEXIS 28358 (D. Nev. June 21, 2004) -------------- 13, 15

*Allen v. McCurry*, 449 U.S. 90 (1980) -----------------------------------------------------------------12

*Anderson v. United States*, 612 F.2d 1112 (9th Cir. 1979) -------------------------------------------24

*Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation*,
   605 F.2d 648 (2nd Cir. 1979) --------------------------------------------------------------------19

*Angell v. BER Care, Inc. (In re Caremerica, Inc.)*,
   409 B.R. 737 (Bankr. E.D.N.C. 2009) -----------------------------------------------------------11

*Antelope Valley Union High Sch. Dist.*,
   No. CV 10-04751, 2010 U.S. Dist. LEXIS 115697 --------------------------------------------24

*Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769 (9th Cir. 2003)---------------------------21

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)------------------------------------------------------------10

*Bailey v. IRS*, 188 F.R.D. 346 (D. Ariz. 1999),
   *aff'd*, 232 F.3d 893 (9th Cir. 2000) -----------------------------------------------------------16

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1988)------------------------------------11

*Bank of Lafayette v. Baudoin (In re Baudoin)*, 981 F.2d 736 (5th Cir. 1993)------------------- 13, 14

*Bankers Mortg. Co. v. United States*, 423 F.2d 73 (5th Cir. 1970) ----------------------------------21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)------------------------------------------------11

*Bennett v. Gemmill (In re Combined Metals Reduction Co.)*,
   557 F.2d 179 (9th Cir. 1977) ----------------------------------------------------------------22

*Bullion Servs., Inc. v. Valley State Bank*, 50 F.3d 705 (9th Cir. 1995)--------------------------------18

*Burda Media Inc. v. Viertel*, 417 F.3d 292 (2d Cir. 2005)------------------------------------------16

*Carr v. King (In re Carr)*, 321 B.R. 702 (Bankr. E.D. Va. 2005) ----------------------------------22

*Chudacoff v. Univ. Med. Ctr. of S. Nev.*,
   No. 2:09-cv-016792010, U.S. Dist. LEXIS 104152 (D. Nev. Sept. 28, 2010)-------------- 11, 13

*Clark v. Yosemite Cmty. Coll. Dist.*, 785 F.2d 781 (9th Cir. 1986)------------------------------------15

*Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*,
   391 B.R. 25 (B.A.P. 9th Cir. 2008)-------------------------------------------------------------23

*CMR Mortg. Fund, LLC v. Canpartners Realty Holding Co. IV LLC
   (In re CMR Mortg. Fund, LLC)*, 416 B.R. 720 (Bankr. N.D. Cal. 2009) --------------------------11

*CO2 Design Group v. Harrah's Imperial Palace Corp.*,
   No. 2:10-cv-0053, 2011 U.S. Dist. LEXIS 13203 (D. Nev. Feb. 8, 2011) ------------------------10

*D.R. v. Antelope Valley Union High Sch. Dist.*,
   No. CV 10-04751, 2010 U.S. Dist. LEXIS 115697 (C.D. Cal. Oct. 8, 2010)----------------------24

*Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010) -----------------------------------11

*Darby v. Zimmerman (In re Popp)*, 323 B.R. 260 (B.A.P. 9th Cir. 2005)-------------------------------23

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NYC/573676.3

- ii -

*EDP Med. Computer Sys. v. United States*, 480 F.3d 621 (2d Cir. 2007) ------------ 12, 13, 14, 15

*FDIC v. Glickman,* 450 F.2d 416 (9th Cir. 1971)------------------------------------------------18

*FDIC v. Nick Julian Motors (In re Nick Julian Motors),*
    148 B.R. 22 (Bankr. N.D. Tex. 1992) ----------------------------------------------------19

*Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394 (1981) -------------------------------14

*First Nat'l Ins. Co. of Am. v. FDIC*, 977 F. Supp. 1060 (S.D. Cal. 1997)-------------------18

*First Star Capital Corp. v. Ruby*, 124 Nev. 88, 194 P.3d 709 (2008)---------------------------13

*Focus Media, Inc. v. Nat'l Broad. Co. (In re Focus Media, Inc.),*
    378 F.3d 916 (9th Cir. 2004) ----------------------------------------------------------- 22, 23

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238 (1944) ---------------------------21

*In re 310 Assocs.,* 346 F.3d 31 (2d Cir. 2003) ----------------------------------------------19

*In re James Wilson Assocs.,* 965 F.2d 160 (7th Cir. 1992) -----------------------------------14

*In re Stac Elecs. Sec. Litig.,* 89 F.3d 1399 (9th Cir. 1996) --------------------------------11

*In re Xpedior, Inc,* 354 B.R. 210 (Bankr. N.D. Ill, 2006)-----------------------------------14

*Kagan v. Caterpillar Tractor Co.,* 795 F.2d 601 (7th Cir. 1986)-----------------------------19

*Knupfer v. Wolfberg,* 255 B.R. 879 (B.A.P. 9th Cir. 2000) ----------------------------------15

*Kremer v. Chem. Constr. Corp.,* 456 U.S. 461 (1982) ---------------------------------------12

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ----------------------------------12

*Marcelli v. Walker*, 313 F. App'x 839 (6th Cir. 2009)---------------------------------------21

*MGIC Indem. Corp. v. Weisman*, 803 F.2d 500 (9th Cir. 1986) -------------------------------12

*N.H. v. Me.*, 532 U.S. 742 (2001) ---------------------------------------------------------12

*Nat'l Sur. Co. v. State Bank,* 120 F. 593 (8th Cir. 1903)------------------------------------21

*Nordhoff Invs., Inc. v. Zenith Elecs. Corp.,* 258 F.3d 180 (3d Cir. 2001) ------------------23

*O'Melveny & Myers v. FDIC,* 512 U.S. 79 (1994) ---------------------------------------------17

*Onouli-Kona Land Co. v. Estate of Richards (In re Onouli-Kona Land Co.),*
    846 F.2d 1170 (9th Cir. 1988)---------------------------------------------------------20

*Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708 (9th Cir. 2001) -------------------12

*Phelps v. Alameida,* 569 F.3d 1120 (9th Cir. 2009),
    *cert. denied,* 130 S. Ct. 1072 (2010)------------------------------------------------20

*RDM Holdings, Ltd. v. Cont'l Plastics Co.,*
    762 N.W.2d 529 (Mich. Ct. App. 2008) ------------------------------------------------13

*Salsberg v. Trico Marine Servs., Inc. (In re Trico Marine Servs., Inc.),*
    337 B.R. 811 (Bankr. S.D.N.Y. 2006) ------------------------------------------ 22, 23

*Sanders Confectionery Prods, Inc.. v. Heller Fin., Inc.,*
    973 F.2d 474 (6th Cir. 1992) --------------------------------------------------------13

*Schoen v. Schoen,* 933 F. Supp. 871 (D. Ariz. 1996),
    *aff'd,* 113 F.3d 1242 (9th Cir. 1997)------------------------------------------------16

*SEC v. Internet Solutions for Bus. Inc.,* 509 F.3d 1161 (9th Cir. 2007) ------------------ 16, 17

*Siegel v. Fed. Home Loan Mortg. Corp.,* 143 F.3d 525 (9th Cir. 1998) ---------------------14

*Sierra Pac. Power Co. v. Craigie,* 738 F. Supp. 1325 (D. Nev. 1990) ----------------------15

1

2  *Sprewell v. Golden State Warriors,* 266 F.3d 979 (9th Cir. 2001) ------------------------------------11

3  *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313 (9th Cir. 1994)------------------------------------------24

   *Stormans, Inc. v. Selecky,* 586 F.3d 1109 (9th Cir. 2009) ---------------------------------------24

4  *Stratosphere Litig. L.L.C. v. Grand Casinos, Inc.*, 298 F.3d 1137 (9th Cir. 2002)-----------------13

5  *Suter v. Goedert*, 504 F.3d 982 (9th Cir. 2007) ---------------------------------------------------22

6  *Tahoe-Sierra Pres. Council, Inc.v. Tahoe Reg'l Planning Agency,*
       322 F.3d 1064 (9th Cir. 2003)------------------------------------------------------------------- 13, 15

7  *Trigo v. FDIC,* 847 F.2d 1499 (11th Cir. 1988) -------------------------------------------------18

8  *Trone v. Roberts Farms, Inc. (In re Roberts Farms, Inc.),*
       652 F.2d 793 (9th Cir. 1981) ------------------------------------------------------------------23

9  *United States Trustee v. Craige (In re Salina Speedway),*
       210 B.R. 851 (B.A.P. 10th Cir. 1997)---------------------------------------------------------15

10 *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047 (9th Cir. 1993) ---------------------19

11 *United States v. Beggerly,* 524 U.S. 38 (1998)------------------------------------------------- 20, 21

12 *United States v. Heffner,* 85 F.3d 435 (9th Cir. 1996) -----------------------------------------18

   *United States v. Int'l Bhd. of Teamsters,* 247 F.3d 370 (2d Cir. 2001)-------------------------------16

13 *United States v. Ritchie,* 342 F.2d 903 (9th Cir. 2003)-----------------------------------------11

14 *United Student Aid Funds, Inc. v. Espinosa,* 130 S. Ct. 1367 (2010) ------------------------------17

15 *W. Mining Council v. Watt,* 643 F.2d 618 (9th Cir. 1981)-----------------------------------------10

   *W. Radio Servs. Co. v. Glickman,* 123 F.3d 1189 (9th Cir. 1997) ---------------------------- 12, 13

16 *Western Sys. v. Ulloa,* 958 F.2d 864 (9th Cir. 1992) ---------------------------------------------13

17 *Williams v. FDIC,* No. C09-0504, 2009 WL 5054553 (W.D. Wash. Oct. 8, 2009)-----------------18

18 *Winter v. Natural Res. Def. Council, Inc.,* 129 S. Ct. 365 (2008) -----------------------------------24

   *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658 (9th Cir. 1998) --------------------10

19
                                        <u>RULES</u>

20 Bankruptcy Rule 9024------------------------------------------------------------------------------16

21 Fed. R. Bankr. P. 8002 ----------------------------------------------------------------------------14

22 Fed. R. Civ. P. 60(b)-------------------------------------------------------------------------------16

   Fed. R. Civ. P. 60(b)(6) ---------------------------------------------------------------------------19

23 Fed. R. Civ. P. 60(c)(1) ---------------------------------------------------------------------------19

24 Fed. R. Civ. P. 60(d)-------------------------------------------------------------------------------20

25
                                    <u>TREATISES</u>

26 11 Charles Alan Wright, et al., Fed. Prac. & Proc. § 2868 (2d ed. 1987) ----------------------------21

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

The FDIC-R had the opportunity to claim an interest in the 2006 Tax Refund in 2009. The FDIC-R said and did nothing and permitted those funds to be handled by the Trustee (defined below) and ultimately distributed to the Debtor's creditors; it cannot change its mind and claim ownership of those funds.

Silver State Bancorp. (the "Debtor") filed its petition for relief under Chapter 7 of the Bankruptcy Code on January 6, 2009 (the "Petition Date") [Chapter 7 Case, BK-S-09-10069, Docket No. 1.] The FDIC-R is listed twice on the Creditor Mailing Matrix. On June 17, 2009, the Trustee filed the Trustee's Notice of Assets & Notice to File Claim (the "Asset Notice"), which indicated that the last date to file a Proof of Claim in the bankruptcy case was September 21, 2009 (the "Bar Date"). [Docket No. 24.] On June 20, 2009, the Clerk of the Court mailed the Trustee's Notice of Finding Assets, Notice to File Proof of Claim and Notice of Time Limitation with a certificate of mailing. [Docket No. 25.] The FDIC-R is listed on the Clerk of the Court's certificate of mailing. *Id.* As indicated on the Claims Register, the FDIC-R did not file a Proof of Claim. The Docket also reveals that the FDIC-R did not commence an adversary proceeding or file a motion asserting an interest in the 2006 Tax Refund.

On November 19, 2009, the Trustee filed a Motion for Interim Distribution to Creditors and Application for Interim Payment of Chapter 7 Trustee's Fees, seeking to disburse the 2006 Tax Refund to unsecured creditors and pay related interim fees to the Trustee (the "First Distribution Motion"). [Docket No. 81.] The Trustee attached to his First Distribution Motion a letter from counsel for the TOPrS Trustee, which disclosed that the TOPrS Trustee would be distributing to the TOPrS Holders any money it received from the Debtors. "[A]ll distributions on account of the Debtor's obligations are to be made to Wilmington Trust, which will then effectuate the distributions to the applicable debenture holders." [Docket No. 81, Ex. 1.]

The FDIC-R received notice of the First Distribution Motion but did not object to it. On December 22, 2009, this Court granted the Trustee's First Distribution Motion and permitted the Trustee to pay Chapter 7 administrative claims and priority claims from the 2006 Tax Refund (the

NYC/573676.3

1

2  "First Distribution Order").  [Docket No. 103.]  The Trustee subsequently paid the 2006 Tax

3  Refund to various Recipients, including $4,342,493.40 to Wilmington Trust in its capacity as

4  TOPrS Trustee for each of the four series of Trust Documents (the "TOPrS First Distribution").

5  On or about January 6, 2010 – after the First Distribution Order became final – the TOPrS

6  Trustee delivered the TOPrS First Distribution to the Record Holders in accordance with the

7  Trust Documents.  As a result, the TOPrS Trustee does not have possession of or control over the

8  TOPrS First Distribution, which presumably is in the hands of countless parties ranging from

9  individual investors to large institutional investors.[3]  In other words, the money is gone.

10      Now, knowing that the TOPrS Trustee would be dispersing any funds it received from the

11  Trustee and after having sat on its hands for well over a year, the FDIC-R seeks a ruling from this

12  Court that (i) the 2006 Tax Refund is not part of the Debtor's bankruptcy estate, (ii) the Court's

13  First Distribution Order is void and should be set aside, and (iii) the Trustee should be compelled

14  to recover the 2006 Tax Refund from the Recipients, including the TOPrS Trustee, through a

15  mandatory preliminary injunction.  Not only is FDIC-R asking this Court to unscramble the

16  proverbial egg, but, in the case of the TOPrS Trustee, the FDIC-R has the audacity to do so long

17  after the egg is gone.

18      The FDIC-R's claims concerning the 2006 Tax Refund must be dismissed under Federal

19  Rule of Civil Procedure 12(b)(6)[4] for failure to state a claim upon which relief can be granted.[5]  In

20  addition, the FDIC-R's claims against the TOPrS Trustee concerning the 2006 Tax Refund should

21  be dismissed based on the doctrine of equitable mootness.

22

23

24

---

25  [3] After giving effect to the charging lien under the Trust Documents, the balance was distributed to the TOPrS Holders.

26  [4] Federal Rule of Civil Procedure 12 is made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012.

27  [5] To be clear, Wilmington Trust is moving to dismiss all of Count II and Count III, and that part of Count I relating to

28  the 2006 Tax Refund and the First Distribution.  If the Court grants the TOPrS Trustee's Motion to Dismiss *in toto*, the only claim that would remain against the TOPrS Trustee is that part of Count I concerning the 2007 Tax Refund.

**FACTUAL BACKGROUND**

**I.      THE TRUST STRUCTURES AND TRANSACTIONAL DOCUMENTS**

Under the trust preferred transactional structure in this case, a company/sponsor (here, the Debtor) issues debentures, which are sold to a newly-created trust.  That trust then sells preferred shares in the trust to the public and, as consideration for the debentures received by the trust, transfers common shares in the trust back to the company/sponsor (the Debtor).  The company/sponsor (the Debtor) then makes payments to the trust on account of its obligations with respect to the debentures.  The trust, in turn, uses those funds to satisfy the trust's obligations to the holders of the preferred securities and common shares, and upon default, to the holders of preferred securities receives payments that would otherwise be payable to the holders of the common shares.  In addition, pursuant to a separate guarantee agreement, the company/sponsor (the Debtor) guarantees the payment of the amounts owed to the holders of the preferred shares.

As more specifically described below, the Debtor entered into four separate and distinct transactions for which Wilmington Trust serves in various trustee capacities.  As a result, as of the Petition Date, the Debtor's liability on account of its obligations under the Trust Documents (defined below) was (a) $5,377,245.02, plus fees and expenses of the TOPrS Trustee, under the Series II Trust Documents (defined below); (b) $5,327,138.69, plus fees and expenses of the TOPrS Trustee, under the Series III Trust Documents (defined below); (c) $21,141,185.13, plus fees and expenses of the TOPrS Trustee, under the Series IV Trust Documents (defined below); and (d) $7,933,787.97, plus fees and expenses of the TOPrS Trustee, under the Series V Trust Documents (defined below).  *See* Declaration of Suzanne J. MacDonald in Support of the Initial Omnibus Opposition of Wilmington Trust Company in its capacity as Indenture Trustee, Delaware Trustee, Institutional Trustee, Property Trustee and Guarantee Trustee with Respect to Four Series of TOPrS Trusts, to FDIC's Motion for Relief from Court's December 22, 2009 Order and Request for Disgorgement of Interim Distributions (the "MacDonald Decl.") ¶ 18 [Docket No.173.][6]

---

[6] Pursuant to the February 4, 2011 Stipulation and Consent Order (I) Granting Motion to Consolidate Contested Matter and Adversary Proceeding and (II) Establishing Certain Deadlines ("Stipulation and Order") [Docket No. 206], the FDIC-R's Disgorgement Motion, the Trustee's Disgorgement Opposition, and the TOPrS Trustee's

1

2          A.        **The Trust II Documents**

3                  On March 28, 2003, Silver State entered into the Indenture dated as of March 28, 2003,

4    between Silver State, as issuer, and Wilmington Trust, as trustee (the "Series II Indenture"),

5    pursuant to which Silver State issued the Floating Rate Junior Subordinated Debt Securities Due

6    2033 in the original aggregate principal amount of $5,155,000 (the "Series II Debentures").  *See*

7    MacDonald Decl. ¶ 4.  Contemporaneously, Silver State entered into the Amended and Restated

8    Declaration of Trust of Silver State Capital Trust II dated as of March 28, 2003, between

9    Wilmington Trust, as Delaware Trustee, Institutional Trustee, Paying Agent, Registrar and

10   Transfer Agent, the Administrators (as defined therein), and Silver State, as the Sponsor (as

11   defined therein) (as amended and/or supplemented, the "Series II Trust Declaration").  *Id.* ¶ 5.

12   Pursuant to the Series II Trust Declaration, the Silver State Capital Trust II (the "Series II Trust")

13   was created.  *Id.*  The Series II Debentures were sold to the Series II Trust.  *Id.* ¶ 6.

14   Simultaneously, the Series II Trust issued certain Common Securities to the Sponsor and sold

15   $5,000,000 of the Capital Securities of Silver State Capital Trust II, having a liquidation amount

16   of $1,000 per Capital Security (the "Series II Capital Securities"), in a private placement; the

17   Series II Capital Securities represent preferred undivided beneficial interests in the assets of the

18   Series II Trust (*i.e.,* the Series II Debentures).  *Id.*

19                  Under a separate Guarantee Agreement dated as of March 28, 2003 (as amended and/or

20   supplemented, the "Series II Guarantee")[7] between Silver State, as guarantor, and Wilmington

21   Trust, as Guarantee Trustee for the benefit of the holders of the Series II Capital Securities, Silver

22   State also guaranteed all payments or distributions due to the holders of the Series II Capital

23   Securities.  *Id.* ¶ 7.  In general, Silver State would make payments on account of the Series II

24   Debentures to the Series II Trust, and the Series II Trust, through the Paying Agent, would in turn

25   distribute those payments to holders of the Series II Capital Securities and the common securities

26   as provided under the Series II Trust Documents.  *Id.* ¶ 8.

27   _____

     Disgorgement Opposition and related pleadings are deemed filed in the Adversary Proceeding.  *See* Stipulation and
28   Order at 6, ¶ 2.

     [7] The Series II Indenture, the Series II Trust Declaration and the Series II Guarantee are collectively referred to as the
     "Series II Trust Documents."  Copies of the relevant provisions of the Series II Trust Documents are collectively
     attached to the MacDonald Decl. as **Exhibit A**.

1

2          **B.        Three Additional Series Of Trust Documents**

3              In addition to the obligations under the Series II Trust Documents, Silver State also

4    incurred nearly identical obligations under three additional, separate series of trust documents.

5    *Id.* ¶ 9.  For the convenience of the Court, and since the material terms of these additional series

6    of trust documents contain the nearly identical terms as the Series II Trust Documents, the TOPrS

7    Trustee will identify only the relevant additional documents in this Motion to Dismiss, which are

8    more fully described in the TOPrS Claims.[8]  The additional documents are:

9          i.   **Series III Transaction** – (a) the Indenture dated March 25, 2004, between Silver
10              State, as issuer and Wilmington Trust, as trustee (the "Series III Indenture"),
                pursuant to which Silver State issued the Floating Rate Subordinated Debt
11              Securities Due 2034 in the original aggregate principal amount of $5,155,000 (the
                "Series III Debentures"); (b) the Amended and Restated Declaration of Trust of
12              Silver State Capital Trust III dated as of March 25, 2004 (as amended and/or
                supplemented, the "Series III Trust Declaration") between Silver State, as Sponsor,
13              Wilmington Trust, as Delaware Trustee, Institutional Trustee, Paying Agent,
                Registrar and Transfer Agent, and the Administrators (as defined therein),
14              pursuant to which the Silver State Capital Trust III (the "Series III Trust") was
                created which thereafter issued the Common Securities to the Sponsor and sold
15              $5,000,000 of the Capital Securities of Silver State Capital Trust III having a
                liquidation amount of $1,000 per Capital Security (the "Series III Capital
16              Securities") in a private placement; and (c) the Guarantee Agreement dated March
                24, 2004 (as amended and/or supplemented, the "Series III Guarantee," together
17              with the Series III Indenture and Series III Trust Declaration, the "Series III Trust
                Documents") between Silver State, as guarantor, and Wilmington Trust, as
18              Guarantee Trustee for the benefit of the holders of the Series III Capital Securities.
19

20         ii.  **Series IV Transaction** – (a) the Junior Subordinated Indenture dated as of August
                25, 2006, between Silver State, as issuer, and Wilmington Trust, as trustee (the
21              "Series IV Indenture"), pursuant to which Silver State issued the Floating Rate
                Junior Subordinated Notes Due 2036 in the original aggregate principal amount of
22              $20,619,000 (the "Series IV Debentures"); (b) the Amended and Restated
                Declaration of Trust of Silver State Capital Trust IV dated as of August 25, 2006
23              (as amended and/or supplemented, the "Series IV Trust Declaration") between
                Silver State, as Depositor, Wilmington Trust, as Delaware Trustee, Property
24              Trustee, Paying Agent, Registrar and Transfer Agent, and the Administrators (as
                defined therein), pursuant to which the Silver State Capital Trust IV (the "Series
25              IV Trust") was created, which thereafter issued the Common Securities to Silver
                State and sold $20,000,000 of the Preferred Securities of Silver State Capital Trust
26              IV having a liquidation amount of $1,000 per Preferred Security (the "Series IV
27              Preferred Securities") in a private placement; and (c) the Guarantee Agreement

28
_____
[8] All cites in this Motion to Dismiss will be to the Series II Trust Documents.  The TOPrS Trustee will provide cites
to the additional Trust Documents upon request.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

NYC/573676.3
- 5 -

dated August 25, 2006 (as amended and/or supplemented, the "Series IV Guarantee," together with the Series IV Indenture and the Series IV Trust Declaration, the "Series IV Trust Documents") between Silver State, as guarantor, and Wilmington Trust, as Guarantee Trustee for the benefit of the holders of the Series IV Preferred Securities.

iii.   **Series V Transaction** – (a) the Indenture dated as of December 5, 2006 between Silver State, as issuer, and Wilmington Trust, as trustee (the "Series V Indenture"), pursuant to which the Company issued the Floating Rate Junior Subordinated Debt Securities Due 2037 in the original aggregate principal amount of $7,732,000 (the "Series V Debentures"); the Amended and Restated Declaration of Trust of Silver State Capital Trust V dated as of December 5, 2006 (as amended and/or supplemented, the "Series V Trust Declaration") between Silver State, as Sponsor, Wilmington Trust, as Delaware Trustee, Institutional Trustee, Paying Agent, Registrar and Transfer Agent and the Administrators (as defined therein), pursuant to which the Series V Trust Declaration, the Silver State Capital Trust V (the "Series V Trust")[9] was created, which thereafter issued the Common Securities to the Sponsor and sold $7,500,000 of the Capital Securities of Silver State Capital Trust V having a liquidation amount of $1,000 per Capital Security (the "Series V Capital Securities") in a private placement; and (c) the Guarantee Agreement dated as of December 5, 2006 (as amended and/or supplemented, the "Series V Guarantee," together with the Series V Indenture and Series V Trust Declaration, the "Series V Trust Documents")[10] between Silver State, as guarantor, and Wilmington Trust Company, as Guarantee Trustee for the benefit of the holders of the Series V Capital Securities.

C.      **Distributions And Payments To The TOPrS Holders**

Any payments the Debtor makes on account of obligations owed under the Trust Documents are made to each of the TOPrS Trustees, *i.e.,* Wilmington Trust, *solely in its capacities as Indenture Trustee, Property Trustee, Institutional Trustee, Delaware Trustee and Guarantee Trustee*, as applicable.  *See* MacDonald Decl. ¶ 10; Series II Indenture §§ 3.04 and 6.05; Series II Trust Declaration §§ 2.6(a)(ii), 5.1, 6.2; Series II Guarantee § 2.1(a).  Thereafter, each TOPrS Trustee, as trustee and agent under the relevant Trust Documents, enforces its "charging lien" and deducts amounts from the *res* of the Trusts to satisfy its fees and expenses as permitted under the Trust Documents and remits the remainder to the record holder under the Trust Documents.  *See* MacDonald Decl. ¶ 11; Series II Indenture §§ 5.02, 5.03 and 6.06, Series

---

[9] The Series II Trust, the Series III Trust, the Series IV Trust and the Series V Trust shall collectively be referred to as the "Trusts."

[10] The Series II Trust Documents, the Series III Trust Documents, the Series IV Trust Documents and the Series V Trust Documents shall collectively be referred to as the "Trust Documents".

II Trust Declaration §§ 2.6, 2.8, 9.4 and 9.6, Series II Guarantee §§ 4.1(b), 7.2 and 7.3.  With respect to the Series II and Series III Trusts, the record holder is Hare & Co., as nominee for the Bank of New York; the record holder with respect to the Series IV Trust and Series V Trust is CEDE & Co., as nominee for the Depository Trust Corporation ("DTC," together with Hare & Co., the "Record Holders").  *See* MacDonald Decl. ¶¶ 11-12.[11]

After remitting the distribution to the Record Holders, the TOPrS Trustee has no further role in the distribution process; it has satisfied all of its obligations under the Trust Documents by distributing the payment received to the Record Holders.  *Id.* ¶ 13.  The Record Holders distribute the funds to their participants (the "Participants"), who are generally intermediaries such as banks, brokers, agents or nominees, and sometimes holders, pursuant to their internal protocols.  *Id.*  The Participants then allocate and distribute the payments to the beneficial holders if necessary or appropriate (the "TOPrS Holders").  *Id.*  The foregoing process shall be referred to as the "TOPrS Distribution Process."

The TOPrS Trustee currently does not know and has no information from which it can identify the parties that ultimately benefit from a distribution under the Trust Documents.  *Id.* ¶ 14.  Under the Trust Documents, each TOPrS Trustee is entitled to conclusively rely on any court order or certification by a Chapter 7 trustee regarding, among other things, the amount permitted to be distributed under the Trust Documents.  *See* Series II Indenture § 15.04; *see* MacDonald Decl. ¶ 15.  Here, the TOPrS Trustee relied on the First Distribution Order.

## II.   THE FAILURE OF SILVER STATE BANK AND THE COMMENCEMENT OF THE BANKRUPTCY CASE

### A.   The Bankruptcy Case

The Debtor, as a bank holding company, owned and operated Silver State Bank (the "Bank").  The Bank was closed by the Nevada Financial Institutions Division on September 5, 2008 (the "Closing Date"), and the Federal Deposit Insurance Corporation was appointed receiver.  *See* Compl., ¶¶ 1, 12; *see also* MacDonald Decl. ¶ 16.  On the Petition Date, Silver State filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code

---

[11] The Record Holders are not named as defendants to this action.

1

2   (the "Bankruptcy Code").  *See* Compl., ¶ 25; Docket No. 1.  Defendant James F. Lisowski, Sr.

3   was appointed as the Chapter 7 trustee of the Debtor's estate (the "Trustee").  *See* Compl., ¶ 13;

4   Docket No. 3.

5          In conjunction with its voluntary petition, the Debtor filed its Schedules and Statement of

6   Financial Affairs, indicating its relationship with the FDIC-R and scheduling the Tax Allocation

7   Agreement as an executory contract on Schedule G.  [Docket No. 1.]  Subsequently, the Trustee

8   filed the Asset Notice, which established the Bar Date.  A review of the Claims Register

9   demonstrates that the FDIC-R never filed a claim in this case.

10         **B.      TOPrS Claims**

11         In accordance with the Asset Notice and its rights and obligations under the Trust

12  Documents, each TOPrS Trustee, on behalf the TOPrS Holders, filed separate and distinct claims

13  against the Debtor – claims by the Guaranty Trustee under the Guarantees and claims by the

14  Indenture Trustee under the Indentures and Debentures.  *See* MacDonald Decl. ¶ 18.  As of the

15  Petition Date, the Debtor was in default under the Trust Documents, and remains indebted to each

16  of the four TOPrS Trustees pursuant to, *inter alia*, the Indentures, Trust Declarations and

17  Guarantees for (a) amounts for principal of the respective Debentures, and (b) accrued but unpaid

18  interest as of the Petition Date at the applicable rates specified in the Trust Documents, as well as

19  other fees and costs associated therewith.[12]  *Id*.  Specifically, the TOPrS Trustees, as authorized

20  by the Trust Documents (*see* Series II Indenture § 5.02, Series II Trust Declaration §§ 2.6 and

21  2.8), timely filed proofs of claim (the "TOPrS Claims") in the following amounts (excluding

22  costs, expenses, charges, penalties, indemnities, and other claims):

23

|                       | Claim Nos. | Principal    | Interest     |
|-----------------------|------------|--------------|--------------|
| **Series II Documents**  | 21-23      | $5,155,000   | $222,245.02  |
| **Series III Documents** | 24-26      | $5,155,000   | $172,138.69  |
| **Series IV Documents**  | 27-29      | $20,619,000  | $522,185.13  |
| **Series V Documents**   | 30-32      | $7,732,000   | $201,787.97  |

28

---

[12] Plus certain other costs, charges, expenses and other indemnities as provided in the relevant documents and any claims for breach or violation of the Indenture and claims under securities laws, and any other claims arising under state or federal law, including, but not limited to, claims arising under applicable fraudulent conveyance laws.

1

2          The Debtor also is indebted to each of the TOPrS Trustees for interest at the rates

3    provided in the Trust Documents and related and ancillary documents and instruments, from the

4    Petition Date through the date of payment.  MacDonald Decl. ¶ 19.

5    **III.    THE FIRST DISTRIBUTION MOTION**

6          On November 19, 2009, after the Bar Date, the Trustee filed the First Distribution Motion,

7    seeking authority to distribute an $8,300,000 tax refund that the Trustee had received from the

8    Internal Revenue Service ("IRS") (the "First Distribution").  *See* Compl., ¶ 27.  The Trustee

9    attached to the First Distribution Motion a letter from counsel for the TOPrS Trustee, which noted

10   that it would be distributing to the TOPrS Holders any funds it received from the Debtor.  The

11   First Distribution Motion was served on all parties-in-interest, including the FDIC-R.  *See*

12   Disgorgement Motion (defined below) [Docket No. 144], Exhibit 1 (certified mail receipts

13   indicating service of the First Distribution Motion on the FDIC-R, including service on James

14   Vordtriede, the senior financial analyst that submitted the Vordtriede Declaration[13] in support of

15   the FDIC-R Opposition (defined below) [Docket No. 129.]  The FDIC-R did not object to the

16   First Distribution Motion.  *See* Compl., ¶ 30; Stipulation and Order, at 3, § B ("no objections

17   were filed to the First Distribution Motion").

18         On December 22, 2009, the Court, after a hearing, entered the First Distribution Order,

19   which became a final order on or about January 5, 2010.  *See* Docket No. 103.  Pursuant to the

20   First Distribution Order and the operative Trust Documents, on or about December 24, 2009, the

21   Trustee paid to the TOPrS Trustee the sum of $4,342,493.40 (the "TOPrS First Distribution" or

22   "First Distribution").  *See* MacDonald Decl. ¶ 21.  This amount represented the TOPrS Trustee's

23   *pro rata* share of the First Distribution on account of the TOPrS Claims.[14]  *Id.*

24         On January 6, 2010, after the First Distribution Order became final and in accordance with

25   the Trust Documents, each TOPrS Trustee delivered the TOPrS Distribution to the Record

26

27   ---
     [13] The "Vordtriede Declaration" means the Declaration of Senior Financial Management Analyst James Vordtriede In Support of FDIC's Opposition to Motion for Second Interim Distribution to Creditors and Application for Second Interim Payment of Chapter 7 Trustee [Docket No. 141] (the "Vordtriede Declaration").

28   [14] Notwithstanding the fact that the distribution was on account of the separate claims under each set of Trust Documents, as well as the fees and expenses of each TOPrS Trustee, the Chapter 7 Trustee sent only one check.

Holders.  *See* MacDonald Decl. ¶ 23.  Specifically, the allocation of the TOPrS First Distribution was: (a) $554,224.50 to the Series II Trust, (b) $549,060.42 to the Series III Trust, (c) $2,178,991.12 to the Series IV Trust, and (d) $817,723.96 to the Series V Trust.  *Id.* ¶ 21.  After paying the Record Holders, the TOPrS Trustee had no further contact or role in the distribution process.  *See id.*  The TOPrS Trustee believes that the funds were distributed ultimately to the TOPrS Holders in accordance with the TOPrS Distribution Process.  *Id.* ¶ 24.  It is likely that countless parties ranging from individual investors to large institutional investors long ago received the proceeds of the First TOPrS Distribution.

## IV.    THE FDIC-R'S DISGORGEMENT MOTION AND SUBSEQUENT COMPLAINT

On December 15, 2010, almost a year after this Court had entered the First Distribution Order, the FDIC-R filed a Motion for Relief from Court's December 22, 2009 Order and Request for Disgorgement of Interim Distributions (the "Disgorgement Motion").  *See* Docket No. 144.  The Disgorgement Motion seeks to compel the TOPrS Trustee and other Recipients to return the funds they received pursuant to the First Distribution Order.  Both the TOPrs Trustee and the Trustee timely filed oppositions to the Disgorgement Motion.  *See* Docket No. 170 (the "Trustee Disgorgement Opposition") and 172 (the "TOPrS Trustee Disgorgement Opposition").  The FDIC-R's Complaint in this adversary proceeding seeks nearly identical relief as it sought in the Disgorgement Motion with respect to the 2006 Tax Refund.

### ARGUMENT

In a Rule 12(b)(6) motion, "all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."  *CO2 Design Group v. Harrah's Imperial Palace Corp.*, No. 2:10-cv-0053, 2011 U.S. Dist. LEXIS 13203, at *3 (D. Nev. Feb. 8, 2011) (quoting *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658 (9th Cir. 1998) (citation omitted)).  Although courts generally assume the facts alleged as true, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  Instead, to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . .  to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Accordingly, "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss . . . ." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996); *see also Chudacoff v. Univ. Med. Ctr. of S. Nev.*, No. 2:09-cv-016792010, U.S. Dist. LEXIS 104152, *18 (D. Nev. Sept. 28, 2010) (noting that the court "is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." (citing *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001))); *Angell v. BER Care, Inc. (In re Caremerica, Inc.)*, 409 B.R. 737, 745 (Bankr. E.D.N.C. 2009) (explaining that "[i]n order to survive a motion to dismiss, a plaintiff must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" (citing *Twombly*, 550 U.S. at 555)).  Dismissal under Rule 12(b)(6) may be based on either:  (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (citation omitted).  "A court should dismiss a complaint if it does not set forth factual allegations permitting a *plausible* conclusion that the plaintiff would be entitled to relief if allowed to proceed beyond the motion to dismiss."  *CMR Mortg. Fund, LLC v. Canpartners Realty Holding Co. IV LLC (In re CMR Mortg. Fund, LLC)*, 416 B.R. 720, 728 (Bankr. N.D. Cal. 2009) (citing *Twombly*, 550 U.S. 544) (emphasis added).  A plaintiff must plead specific facts providing a plausible basis to conclude that the essential elements of the asserted claim are met.  *Id.*

Although generally the scope of review on a motion to dismiss for failure to state a claim is limited to the complaint, a court may consider evidence on which the "complaint necessarily relies if:  (1) the complaint refers to the document; (2) the document is central to the plaintiff's claims; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citations omitted).  The court may "treat such document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'"  *Id.* (quoting *United States v. Ritchie*, 342 F.2d 903, 908 (9th Cir. 2003)).  In addition, "[a] court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary

judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citing *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)).

Here, even when viewed in the light most favorable to the FDIC-R, and with every doubt resolved in its favor, the Complaint does not state any valid claim for relief as to the 2006 Tax Refund or the TOPrS First Distribution. Accordingly, all of Counts II and III, and that part of Count I that relates to the 2006 Tax Refund and the First Distribution should be dismissed.[15]

## I. THE FDIC-R'S CLAIMS FOR RELIEF AS TO THE 2006 TAX REFUND AND THE FIRST DISTRIBUTION FAIL TO STATE A VIABLE CLAIM FOR RELIEF

### A. The Adversary Proceeding As To The 2006 Tax Refund And First Distribution Is Barred By The Doctrine Of *Res Judicata* (Claim Preclusion)

Under the claim preclusion doctrine, parties are prohibited from relitigating claims that were or could have been raised in a prior action that resulted in a final judgment. *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 467 (1982) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (citing *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997)). "Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *N.H. v. Me.*, 532 U.S. 742, 748 (2001).

Application of the claim preclusion doctrine relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources, prevents inconsistent decisions, and encourages reliance on final adjudications. *Allen*, 449 U.S. at 94. These goals are especially important in a Chapter 7 liquidation:

> [Res judicata] relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication. These virtues have no less value in the bankruptcy context; this is particularly true in a Chapter 7 liquidation where it is desirable that matters be resolved as expeditiously and economically as possible.

*EDP Med. Computer Sys. v. United States*, 480 F.3d 621, 624-25 (2d Cir. 2007) (internal

---

[15] The FDIC-R makes passing reference in Count I to section 502(j) of the Bankruptcy Code, which relates to reconsideration of allowed claims. Not only does the FDIC-R not plead any facts sufficient to support relief under Section 502(j) of the Bankruptcy Code, but that provision simply has no bearing on this matter whatsoever.

1

2   quotations and citations omitted); *see also Bank of Lafayette v. Baudoin (In re Baudoin)*, 981 F.2d

3   736, 740 (5th Cir. 1993) (observing that "it is more imperative than ever that the doctrine of *res*

4   *judicata* be applied with unceasing vigilance" to Chapter 7 proceedings); *see generally EDP Med.*

5   *Computer Sys.*, 480 F.3d at 624-27 (finding that a bankruptcy court order allowing an uncontested

6   proof of claim constituted a final judgment for *res judicata* purposes, particularly since the proof

7   of claim was approved by a court order, and the taxpayer, as debtor, had an opportunity to litigate

8   the proof of claim).

9          *Res judicata* applies where there is: "(1) an identity of claims, (2) a final judgment on the

10  merits, and (3) [identity or] privity between the parties." *Tahoe-Sierra Pres. Council, Inc.v.*

11  *Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003) (quoting *Stratosphere Litig.*

12  *L.L.C. v. Grand Casinos, Inc.*, 298 F.3d 1137, 1143 n.3 (9th Cir. 2002)); *see also Aldridge v.*

13  *United States Dep't of Veterans' Affairs,* No. CV-N-04-0016, 2004 U.S. Dist. LEXIS 28358, *4

14  (D. Nev. June 21, 2004) (quoting *Glickman*, 123 F.3d at 1192); *cf. Western Sys. v. Ulloa*, 958

15  F.2d 864, 871 (9th Cir. 1992) (noting that "[t]he *res judicata* effect of federal court judgments is a

16  matter of federal law.")).  The test for *res judiciata* under Nevada state law is not significantly

17  differently, namely that:  (1) the parties or their privies are the same; (2) the final judgment is

18  valid; and (3) the subsequent action is based on the same claims or any part of them that were or

19  could have been brought in the first case." *First Star Capital Corp. v. Ruby*, 124 Nev. 88, 194

20  P.3d 709, 713 (2008); *Chudacoff*, No. 2:09-cv-016792010, 2010 U.S. Dist. LEXIS 104152, at *18

21  (noting that "any difference between federal and Nevada preclusion doctrine is immaterial.").

22         The FDIC-R's claims relating to the First Distribution are barred by *res judicata*.  First,

23  the FDIC-R was a party with respect to the First Distribution Order for purposes of *res judicata*.

24  *See Sanders Confectionery Prods., Inc.. v. Heller Fin., Inc.*, 973 F.2d 474, 480-81 (6th Cir. 1992)

25  (stating that creditors in bankruptcy proceedings must be considered parties for purposes of *res*

26  *judicata*.); *RDM Holdings, Ltd. v. Cont'l Plastics Co.*, 762 N.W.2d 529, 541 (Mich. Ct. App.

27  2008) ("The rights and obligations of debtors, creditors, shareholders, and other parties in interest

28  are adjudicated in bankruptcy proceedings for purposes of *res judicata*." (citing *In re Xpedior,*

1

2    *Inc*, 354 B.R. 210, 224 (Bankr. N.D. Ill, 2006))).[16]  The First Distribution Motion was served on

3    all parties-in-interest, including the FDIC-R.  *See* Disgorgement Motion, Ex. 1 (certified mail

4    receipts indicating service of the First Distribution Motion on the FDIC-R, including service on

5    James Vordtriede, the senior financial analyst that submitted the Vordtriede Declaration in

6    support of the FDIC-R Opposition [Docket No. 129]).  The FDIC-R chose not to object to the

7    First Distribution Motion or raise any claim to the 2006 Tax Refund.  *See* Compl., ¶ 30; *see also*

8    Stipulation and Order, at 3, § B ("no objections were filed to the First Distribution Motion").

9         Second, the First Distribution Order became a valid final order on or about January 5,

10   2010, and is a final judgment.  *See* Fed. R. Bankr. P. 8002.  The First Distribution Order was

11   entered on December 22, 2009, and the FDIC-R never filed an appeal or sought reconsideration.

12   "The doctrine of claim preclusion establishes that 'an adverse judgment from which no appeal has

13   been taken is *res judicata* and bars any future action on the same claim.'"  *Orion Tire Corp. v.*

14   *Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1135-36 (9th Cir. 2001) (quoting *Federated Dep't*

15   *Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.4 (1981)).  As the Ninth Circuit explained:

16        The doctrine [of *res judicata*] is founded on the principle that "[a] judgment
         merely voidable because [it is] based upon an erroneous view of the law is not
17        open to collateral attack, but can be corrected only by a direct review and not by
         bringing another action upon the same cause."  To permit another action upon the
18        same cause to displace the direct review of the first judgment would be to invert
         the doctrine's precepts.
19

20   *Orion Tire Corp.*, 268 F.3d at 1136 (internal citation omitted); *see also Baudoin*, 981 F.2d at 742

21   (finding that an uncontested proof of claim is a "final judgment" for *res judicata* purposes); *Siegel*

22   *v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 528-31 (9th Cir. 1998) (citing *Baudoin* with

23   approval); *EDP Med. Computer Sys.*, 480 F.3d at 625 (joining the Fifth and Ninth Circuits in

24   holding that "a bankruptcy court order allowing an uncontested proof of claim constitutes a 'final

25   judgment' for . . . *res judicata* purposes.").  Consequently, the failure on the part of the FDIC-R

26   to act with respect to the First Distribution Motion precludes it from seeking a different outcome

27

28   ───────────────
     [16] "Party in interest" means "anyone who has a legally protected interest that could be affected by a bankruptcy
     proceeding . . . ."  *In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992) (citation omitted).

in a subsequent proceeding.

Third, the FDIC-R is attempting to litigate the same claims (*i.e.*, ownership interests in the 2006 Tax Refund) that it could have raised before the Bankruptcy Court when this Court considered the First Distribution Motion. *See Aldridge,* No. CV-N-04-0016, 2004 U.S. Dist. LEXIS 28358, *4 (applying *res judicata* and stating that "[i]t is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they *could have been brought*." (emphasis added) (quoting *Tahoe-Sierra Pres. Council, Inc.*, 322 F.3d at 1078)); *Knupfer v. Wolfberg,* 255 B.R. 879, 882 (B.A.P. 9th Cir. 2000) ("[r]es judicata bars not only claims that were asserted in the earlier action, but also claims that 'could or should have been raised during the pendency of the case'" (citations omitted));*cf. United States Trustee v. Craige (In re Salina Speedway)*, 210 B.R. 851, 856 (B.A.P. 10th Cir. 1997) (in case where Chapter 11 Trustee filed a liquidating plan and United States Trustee ("UST") filed no objection to the plan, holding that principles of *res judicata* bar UST from asserting in its motion a claim which it should have been aware of at the confirmation hearing and that UST cannot relitigate what it should have litigated at the confirmation hearing). The Trustee served the FDIC-R with the First Distribution Motion, and the FDIC-R sat on its hands after such service. The FDIC-R could (and should) have raised the issue of ownership of the 2006 Tax Refund well over a year ago. It did not. The doctrine of *res judicata* applies not only to claims actually litigated but also to those that could have been litigated earlier. *Clark v. Yosemite Cmty. Coll. Dist.*, 785 F.2d 781, 786 (9th Cir. 1986); *see also Sierra Pac. Power Co. v. Craigie*, 738 F. Supp. 1325, 1329 (D. Nev. 1990) (explaining that the bar of *res judicata* (claim preclusion) applies to matters which could have been litigated in the prior action). "*Res judicata* does not require the precluded claim to actually have been litigated; its concern, rather, is that the party against whom the doctrine is asserted had a full and fair opportunity to litigate the claims." *EDP Med. Computer Sys.*, 480 F.3d at 626; *see generally id.* (noting that "it has long been the law that default judgments can support *res judicata* as surely as judgments on the merits."). Nothing prevented the FDIC-R from asserting ownership of the 2006 Tax Refund in an opposition to the First Distribution Motion. Accordingly, the FDIC-R's claims as to the TOPrS First Distribution

contained in the Complaint are barred under the doctrine of *res judicata*/claim preclusion.

**B.    The FDIC-R Is Bound By The First Distribution Order**

The Complaint also fails to state a viable claim relating to the First Distribution Order because the FDIC-R is bound by the terms of that Order. The First Distribution Order is a final order of this Court; therefore, Rule 60 of the Federal Rules of Civil Procedure ("Rule 60")[17] provides the only avenue for the FDIC-R to avoid being bound by its terms. Rule 60 provides two possible avenues for relief – subsections (b) and (d). The FDIC-R does not meet the requirements for relief under either provision.

*i.    The FDIC-R Is Not Entitled To Relief Under Rule 60(b)*

Rule 60(b) sets forth six separate grounds for relief from a final judgment or order: (i) mistake or excusable neglect; (ii) newly discovered evidence; (iii) fraud or other misconduct; (iv) the judgment is void; (v) changed circumstances; and (vi) the interests of justice. Fed. R. Civ. P. 60(b). The FDIC-R has the burden to prove one or more of these grounds apply before it is entitled to relief from the First Distribution Order. *See, e.g.*, *SEC v. Internet Solutions for Bus. Inc.*, 509 F.3d 1161, 1163 and 1165 (9th Cir. 2007) (citing *Burda Media Inc. v. Viertel*, 417 F.3d 292, 299 (2d Cir. 2005)); *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001) ("[t]he burden of proof is on the party seeking relief from judgment . . . ."); *Schoen v. Schoen*, 933 F. Supp. 871, 875 (D. Ariz. 1996), *aff'd*, 113 F.3d 1242 (9th Cir. 1997); *Bailey v. IRS*, 188 F.R.D. 346, 353 (D. Ariz. 1999), *aff'd*, 232 F.3d 893 (9th Cir. 2000). As shown in the TOPrS Trustee Disgorgement Opposition, the FDIC-R utterly fails to satisfy this burden. The FDIC-R fares no better when the Rule 60(b) analysis is applied to allegations contained in the Complaint because the Disgorgement Motion and the Complaint rely on the same arguments and facts.

**a.    The FDIC-R Cannot Avoid The Consequences Of Electing To Do Nothing With Respect To The First Distribution Motion Of Which It Had Actual Notice**

Under Ninth Circuit precedent, because the FDIC-R had knowledge of the First

---

[17] Rule 60 is made applicable to this adversary proceeding by Bankruptcy Rule 9024.

Distribution Motion and First Distribution Order, its burden for obtaining relief in this proceeding is "substantial." *See Internet Solutions*, 509 F.3d at 1166. In the *Internet Solutions* case, the Ninth Circuit denied a request to rescind a default judgment by a defendant that had received actual notice of the case but failed to appear. *Id.* at 1167. The Ninth Circuit reasoned that a defendant that has knowledge of the relevant allegations but elects to wait to challenge such allegations "should have to bear the consequences of such delay." *Id.* at 1166. The same reasoning applies here. By its own admission, the FDIC-R had actual notice of the First Distribution Motion and this Court's First Distribution Order, and chose to wait nearly a year to seek relief under Rule 60(b). *See* Disgorgement Motion ¶ 10 (stating that the FDIC-R, c/o Jim Vordtriede, was served with the First Distribution Motion) and Vordtriede Declaration; *cf.* Compl., ¶ 28; *see generally United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367, 1378 (2010) (finding that creditor who was not served with summons and complaint in adversary proceeding still received actual notice of a bankruptcy court filing, which satisfied due process and did not entitle creditor to relief under Rule 60(b)(4)), *aff'g Espinosa v. United Student Aid Funds, Inc.,* 553 F.3d 1193 (9th Cir. 2008)). Given these facts, the FDIC-R cannot sustain its burden for relief under Rule 60(b). The FDIC-R must bear the consequences of its decisions and inaction.

### b.    The Trustee Properly Served The FDIC-R With The First Distribution Motion

The FDIC-R claims that the First Distribution Order is void because the Trustee did not properly serve the Motion on the FDIC-R as the U.S. Government in accordance with Bankruptcy Rule 7004(b). *See* Compl., ¶¶ 29, 44, 45. The FDIC-R is mistaken.

Even if service in accordance with the provisions of Bankruptcy Rule 7004 were required (which it was not), the FDIC-R, in its role as receiver and standing in the shoes of the Bank, is not deemed to be the Government. Therefore, appropriate service under Rule 7004(b)(3), as was the case here, is all that is required.

As the Supreme Court has recognized, the FDIC, when acting as a receiver, "is not the United States . . . ." *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 85 (1994). Similarly, the Ninth

1

2    Circuit has noted that "a distinction must be drawn between FDIC's dual capacity as federal

3    insurer of deposits and as liquidating agent for the bank." *FDIC v. Glickman,* 450 F.2d 416, 418

4    (9th Cir. 1971); *see also Williams v. FDIC,* No. C09-0504, 2009 WL 5054553, at *1 (W.D.

5    Wash. Oct. 8, 2009) ("By virtue of the distinct roles and responsibilities of FDIC when acting as a

6    receiver and liquidator of a failed bank and when acting as an agency of the United States as the

7    federal regulator and deposit insurer, FDIC Corporate is legally and functionally a separate

8    entity."); *First Nat'l Ins. Co. of Am. v. FDIC*, 977 F. Supp. 1060, 1063 (S.D. Cal. 1997) ("When

9    the FDIC acts as a receiver it stands in the shoes of the insolvent bank, and when it acts as

10    insurer, it acts as a government agency." (citation omitted)).  Indeed, the FDIC itself has used this

11    distinction to its benefit in a number of situations.  *See, e.g., United States v. Heffner*, 85 F.3d

12    435, 438 (9th Cir. 1996) (agreeing with the FDIC that double jeopardy was inapplicable because

13    prior civil suit prosecuted by FDIC in its receiver capacity was "not conduct of the Government

14    for purposes of the Double Jeopardy Clause"); *Trigo v. FDIC*, 847 F.2d 1499, 1502 (11th Cir.

15    1988) (agreeing with FDIC that FDIC Corporate was not liable for the acts of FDIC Receiver);

16    *Glickman*, 450 F.2d at 419 (agreeing with the FDIC that testimony in a former case brought by

17    FDIC Corporate was not admissible against FDIC Receiver as an exception to the hearsay rule).

18    The FDIC-R cannot change its mind about this issue whenever it suits its purposes.

19            As the Ninth Circuit explained, the "FDIC Corporate and FDIC Receiver perform two

20    different functions and protect wholly different interests, [therefore] courts have been careful to

21    keep the rights and liabilities of these two entities legally separate." *Bullion Servs., Inc. v. Valley

22    State Bank*, 50 F.3d 705, 709 (9th Cir. 1995).  The FDIC-R unabashedly seeks to have this Court

23    ignore this basic precept by claiming that the Trustee needed to serve the FDIC-R as if it were the

24    United States Government.  But the "right" to be served as a governmental entity belongs only to

25    the FDIC in its corporate, or governmental, capacity, and it is not a "right" of the FDIC-R,

26    standing in the shoes of the Bank.  Accordingly, the Trustee properly served the FDIC-R with the

27    First Distribution Motion, and the First Distribution Order is not void as a result of allegedly

28    defective service.  Therefore, Count II of the Complaint should be dismissed.

1

2
    **c.**  **The FDIC-R Failed To Plead Extraordinary**
        **Circumstances That Would Warrant Disruption**
3
        **Of The First Distribution Order**

4
   Furthermore, the FDIC-R is not entitled to relief under Rule 60(b)(6), which provides that
5
a Court can rescind its prior order for "any other reason that justifies relief." Fed. R. Civ. P.
6
60(b)(6). As the FDIC-R admits, relief under Rule 60(b)(6) is allowed only under extraordinary
7
circumstances. *See* Disgorgement Motion, p. 21; *Ackermann v. United States*, 340 U.S. 193, 202
8
(1950) (holding that Rule 60(b)(6) applies in extraordinary circumstances). The FDIC-R is
9
correct: "Rule 60(b)(6) has been used sparingly as an equitable remedy *to prevent manifest*
10
*injustice*." *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993)
11
(emphasis added). Here, Rule 60(b)(6) is inapplicable because rescission of the First Distribution
12
Order would not prevent manifest injustice; rather, it would cause manifest injustice by
13
prejudicing innocent parties.

14
   The FDIC-R is not entitled to relief under Rule 60(b)(6) for the simple reason that it
15
waited too long to ask for it.[18] Rule 60(b)(6) "is to be utilized only where extraordinary
16
circumstances prevented a party from taking timely action to prevent or correct an erroneous
17
judgment." *Alpine Land,* 984 F.2d at 1049; *see also FDIC v. Nick Julian Motors (In re Nick*
18
*Julian Motors)*, 148 B.R. 22, 26-27 (Bankr. N.D. Tex. 1992) (holding that motion to vacate under
19
Rule 60(b)(6) must be filed "within reasonable time" under all facts and circumstances). Not

20

21
---
[18] The First Distribution Order was entered on December 22, 2009. The FDIC-R filed its Disgorgement Motion on
22
December 15, 2010, thus, barely satisfying the one-year-limit for most motions brought under Rule 60(b). That
the FDIC-R filed its motion within one year does not end the inquiry. The FDIC-R must still satisfy the requirement
23
that it brought the motion within a "reasonable time." *See* Fed. R. Civ. P. 60(c)(1). "[T]he one-year period
represents an extreme limit, and the motion will be rejected as untimely if not made within a 'reasonable time,' even
though the one-year period has not expired." *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 610 (7th Cir. 1986);
24
*see also In re 310 Assocs.*, 346 F.3d 31, 35 (2d Cir. 2003) (noting that where a movant alleges judicial error, either of
law or fact, a reasonable time is any time within the deadline to file an appeal). For Rule 60(b) motions made "barely
25
within the one-year time limit," there is a "corresponding increase in the burden that must be carried to show that the
delay was 'reasonable.'" *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation*, 605 F.2d 648,
26
656 (2nd Cir. 1979). The FDIC-R acknowledges in its objection to the Second Distribution Motion [Docket No. 129]
(the "FDIC-R Distribution Objection") that it was aware of the disposition of the 2006 Tax Refund and the First
27
Distribution. *See* FDIC-R Distribution Objection at ¶¶ 5-7. Even if the FDIC-R had filed the Disgorgement Motion
or an adversary proceeding on or around the time it filed its FDIC-R Distribution Objection, which it did not, it still
28
would have been too late because the TOPrS Trustee had distributed the funds pursuant to the First Distribution
Order eight months earlier. Incredibly, however, the FDIC-R waited *another* four months to file its Disgorgement
Motion and *another* five months after that to file this Adversary Proceeding, compounding the FDIC-R's
unreasonableness. Both its Disgorgement Motion and Adversary Proceeding are untimely.

1

2  only has the FDIC-R failed to identify extraordinary circumstances as to why it did not oppose

3  the First Distribution Motion and then waited almost a full year to ask this Court for relief from

4  the First Distribution Order, but it has not identified any reason whatsoever for its delay.

5          Under Rule 60(b)(6), the reason for the FDIC-R's delay must be balanced against, among

6  other things, the interest in finality of judgments and resulting prejudice to other parties if the

7  requested relief is granted.  *See Phelps v. Alameida*, 569 F.3d 1120, 1135 (9th Cir. 2009), *cert.*

8  *denied,* 130 S. Ct. 1072 (2010) ("[courts] have 'cautioned against the use of provisions of Rule

9  60(b) to circumvent the strong public interest in the timeliness and finality' of judgments")

10 (citation omitted); *see also Onouli-Kona Land Co. v. Estate of Richards (In re Onouli-Kona Land*

11 *Co.)*, 846 F.2d 1170, 1172 (9th Cir. 1988) (recognizing the need to protect finality of orders in

12 bankruptcy).  This balance clearly weighs in favor of respecting the finality of the First

13 Distribution Order.  Parties, such as the TOPrS Trustee, relied on the First Distribution Order and

14 waited until the appeal period had passed before remitting the TOPrS First Distribution to the

15 TOPrS Holders in accordance with the Trust Documents.  And the FDIC-R knew from the outset

16 that the TOPrS Trustee would not be keeping the funds but instead would be distributing them

17 pursuant to the Trust Documents.  Most likely, those initial recipients of the funds from the

18 TOPrS Trustee no longer hold the funds, which have been distributed in accordance with the

19 TOPrS Distribution Process to the ultimate beneficial holders with respect to each series of trusts.

20 In essence, the FDIC-R is asking the TOPrS Trustee to, for the most part, return money that it no

21 longer has and it has no means of obtaining.

22         The FDIC-R cannot satisfy its burden to seek relief from the provisions of the First

23 Distribution Order under Rule 60(b).

24                    ii.        **The FDIC-R Has Not Met Its Burden To Sustain**
                                **An Independent Action Under Rule 60(d)**
25

26         The FDIC-R fares no better under Rule 60(d), which permits a court to "entertain an

27 independent action to relieve a party from a judgment, order, or proceeding."  Fed. R. Civ. P.

28 60(d).  Independent actions, however, are "available only to prevent a grave miscarriage of

justice."  *United States v. Beggerly*, 524 U.S. 38, 47 (1998) (holding that plaintiffs did not meet

the "demanding standard" under Rule 60(d)); *see also Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 780 (9th Cir. 2003) (confirming that an independent action is only available to prevent a grave miscarriage of justice). The Supreme Court elaborated that independent actions for relief from judgments should only be used in "cases of 'injustices which, in certain instances, are deemed sufficiently gross to demand a departure' from rigid adherence to the doctrine of *res judicata*." *Beggerly*, 524 U.S. at 46 (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244 (1944)); *see also Appling*, 340 F.3d at 780 (quoting *Beggerly*, 524 U.S. at 46)).

In order to sustain an independent action under Rule 60(d), the moving party must show:

> (1) a judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of the defendant; and (5) the absence of any adequate remedy at law.

*Nat'l Sur. Co. v. State Bank*, 120 F. 593, 599 (8th Cir. 1903); *see also Beggerly*, 524 U.S. at 41 (reciting the Eighth Circuit test); *Bankers Mortg. Co. v. United States*, 423 F.2d 73, 79 (5th Cir. 1970) (citing *Nat'l Sur. Co.*, 120 F. at 599); *Marcelli v. Walker*, 313 F. App'x 839, 842 (6th Cir. 2009); 11 Charles Alan Wright, *et al.*, Fed. Prac. & Proc. § 2868 (2d ed. 1987). The FDIC-R cannot meet this demanding standard because it cannot show, *inter alia*, a "grave miscarriage of justice" that is "sufficiently gross" should the First Distribution Order be allowed to stand. *Beggerly*, 524 U.S. at 46-47. As discussed above, the FDIC-R had actual notice of the Motion and the fact that the TOPrS Trustee would be dispersing the funds and chose to do nothing. Under these circumstances, it would hardly be injustice for the FDIC-R to be bound by this Court's First Distribution Motion.

Indeed, any fault here lies squarely on the FDIC-R. Not only did the FDIC-R fail to file a Proof of Claim in this case and fail to commence an adversary proceeding or contested matter once it knew the 2006 Tax Returns were in the possession of the Trustee, but it also chose not to oppose the First Distribution Motion.[19] Then, incredibly, the FDIC-R did nothing for almost a

---

[19] As previously discussed, after giving effect to the charging lien under the Trust Documents, the TOPrS First Distribution was made.

year after this Court issued its First Distribution Order, and has offered no reason for its delay. The FDIC-R is not entitled to relief from the First Distribution Order under Rule 60(d).

## II. THE DOCTRINE OF EQUITABLE MOOTNESS REQUIRES DISMISSAL OF THE COMPLAINT AGAINST THE TOPrS TRUSTEE AS TO THE 2006 TAX REFUND AND THE FIRST DISTRIBUTION

It is impossible for this Court to grant the relief requested against the TOPrS Trustee in the Complaint as to the 2006 Tax Refund and the First Distribution Order; therefore, the doctrine of equitable mootness applies.

As described above, each of the four TOPrS Trustees distributed the funds it received to its respective Record Holders, who, in turn, have no doubt distributed those funds their respective TOPrS Holders, pursuant to the TOPrS Distribution Process. *See supra,* § I.C; *cf.* MacDonald Decl. ¶ 13. In order words, the TOPrS Trustee no longer holds the TOPrS First Distribution and has no means to recover those funds from the ultimate recipients. *Cf.* MacDonald Decl. ¶ 14. Under these circumstances, Counts II, III, and that part of Count I relating to the 2006 Tax Refund and the First Distribution Order must be dismissed against the TOPrS Trustee.

It is well established that a court should not reverse an order when subsequent events make it impossible for it to fashion effective relief. *Focus Media, Inc. v. Nat'l Broad. Co. (In re Focus Media, Inc.)*, 378 F.3d 916, 922 (9th Cir. 2004) (citing *Bennett v. Gemmill (In re Combined Metals Reduction Co.)*, 557 F.2d 179, 187 (9th Cir. 1977)); *see also Suter v. Goedert*, 504 F.3d 982, 986 (9th Cir. 2007) (stating that in bankruptcy, there is "the particular need for finality in orders"); *Salsberg v. Trico Marine Servs., Inc. (In re Trico Marine Servs., Inc.)*, 337 B.R. 811, 815 (Bankr. S.D.N.Y. 2006) ("the principal concern is whether and to what extent it is feasible to unscramble the egg"); *Carr v. King (In re Carr)*, 321 B.R. 702, 707 (Bankr. E.D. Va. 2005) (noting that doctrine of equitable mootness applies when effective judicial relief is no longer practicable). Here, subsequent events – the distribution of the funds received pursuant to the First Distribution Order – make it impossible to fashion effective relief against the TOPrS Trustee.

In addition, even if it were possible for a court to grant the requested relief, courts will refuse to do so on equitable mootness grounds when the moving party "failed and neglected diligently to pursue [its] available remedies to obtain a stay of the objectionable orders of the

1
2
3
4
5
6
7
8
9
10
11
12
13

Bankruptcy Court, thus permitting such a comprehensive change of circumstances to occur as to render it inequitable to consider the merits . . . ." *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 33 n.7 (B.A.P. 9th Cir. 2008) (quoting *Focus Media,* 378 F.3d at 923)). Put differently, the requesting party is obligated "to pursue with diligence all available remedies to obtain a stay of execution of the objectionable order," *Trone v. Roberts Farms, Inc. (In re Roberts Farms, Inc.)*, 652 F.2d 793, 798 (9th Cir. 1981), and courts must consider "the consequences of the remedy and the number of third parties who have changed their position in reliance on the order . . . ." *In re PW, LLC*, 391 B.R. at 33 (quoting *Darby v. Zimmerman (In re Popp)*, 323 B.R. 260, 271 (B.A.P. 9th Cir. 2005)). In the instant case, the FDIC-R utterly failed to pursue its available remedies until it was too late, and the relief it requests will harm innocent parties. The consequence of the FDIC-R's inaction is that the money distributed to the TOPrS Trustee is long gone.

14
15
16
17
18
19
20
21
22

Further, the Trust Distribution Process is complicated. The doctrine of equitable mootness has been employed to prohibit the disgorgement of payments made by a debtor to its creditors in circumstances involving intricate and involved transactions that practically cannot be unwound. For example, in *Trone v. Roberts Farms, Inc.*, the Ninth Circuit refused to unwind the transactions set forth in an approved plan of reorganization, including distributions to creditors. 652 F.2d at 797-98. According to the Ninth Circuit, the appellant could and should have sought relief from the order immediately through a motion to stay the order; the appellant's failure to do so rendered its appeal moot. *Id.* at 798. Here, the FDIC-R did nothing for nearly a year following the First Distribution Order; and other parties changed their circumstances accordingly.

23
24
25
26
27

As a result, this Court should refuse to undo the complicated TOPrS Distribution Process as it relates to the TOPrS First Distribution because it would be "exceedingly difficult . . . and impossible to protect innocent third parties." *See, e.g.*, *Trico Marine,* 337 B.R at 815; *Nordhoff Invs., Inc. v. Zenith Elecs. Corp.*, 258 F.3d 180, 189 (3d Cir. 2001) (holding that bondholders are interested third parties who "merit protection under the equitable mootness doctrine").

28

### III. THE FDIC-R FAILS TO STATE A CLAIM FOR MANDATORY INJUNCTIVE RELIEF

The proper legal standard for preliminary injunctive relief requires a party to establish

1

2   that:  (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the

3   absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is

4   in the public interest.  *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing

5   *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008)); *D.R. v. Antelope Valley*

6   *Union High Sch. Dist.*, No. CV 10-04751, 2010 U.S. Dist. LEXIS 115697, at **6-7 (C.D. Cal.

7   Oct. 8, 2010).

8       In the Complaint, the FDIC-R is asking this Court to issue a mandatory preliminary

9   injunction directing the Trustee to "pursue such rights under the Code as are necessary and

10   expedient to recover the 2006 Tax Refund from the Recipients, including, without limitation,

11   seeking a turnover order for the 2006 Tax Refund from the Recipients and then delivering the

12   2006 Tax Refund to the FDIC-R."  Compl., ¶ 53.  Mandatory injunctions are disfavored.  "A

13   mandatory injunction, which commands performance of an act, is particularly disfavored and a

14   district court should deny relief unless the facts and law clearly favor the moving party.  *Antelope*

15   *Valley Union High Sch. Dist.*, No. CV 10-04751, 2010 U.S. Dist. LEXIS 115697, at **6-7 (citing

16   *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994)); *see also Anderson v. United*

17   *States*, 612 F.2d 1112, 1114 (9th Cir. 1979) ("[a] mandatory injuction "goes well beyond simply

18   maintaining the status quo pendente lite [and] is particularly disfavored"); *Alabama v. United*

19   *States*, 304 F.2d 583, 597, n.6 (5th Cir.), *aff'd*, 371 U.S. 37 (1962) ("[a] mandatory injunction is

20   an extraordinary remedial process which commands the performance of [a] some positive act"

21   (citation omitted)).

22       An essential element of injunctive relief is that the relief would be in the public interest.

23   The Complaint contains no allegation, or facts to back it up, that forcing the Recipients to return

24   the First Distribution would be in the public interest.  Nor can it.  In fact, and as fully discussed in

25   the TOPrS Trustee Disgorgement Opposition, the relief requested by the FDIC-R would

26   negatively impact the bankruptcy process and the public and private debt markets, which rely on

27   the finality of court orders such as the First Distribution Order.  This omission is fatal to Count

28   III.

    Furthermore, in the Complaint the FDIC-R fails to establish that the balance of equities

1

2   favors the FDIC-R.  The contrary is true.  The FDIC-R elected to do nothing with respect to the

3   First Distribution Order and the 2006 Tax Refund.  But now, over a year later, the FDIC-R seeks

4   to assert its alleged rights.  This fact, as well as the reliance by the TOPrS Trustee on the finality

5   of this Court's First Distribution Order, clearly tips the balance of equities in favor of the

6   Recipients and against the FDIC-R's requested relief in Count III.  In sum, the FDIC-R failed to

7   plead adequate facts to support its request for injunctive relief in Count III.  It should be

8   dismissed.

9                                    **RESERVATION OF RIGHTS**

10          The TOPrS Trustee hereby reserves all rights to further address issues arising under the

11  Complaint (including, but not limited to, asserting any affirmative defenses such as estoppel,

12  waiver, and laches), the ownership of the tax refunds, and other ancillary issues, and to respond to

13  any pleading of the FDIC-R, or any other party, either by further submission to the Bankruptcy

14  Court, at oral argument, or through testimony to be presented at any hearing.

15                                        **CONCLUSION**

16          For the foregoing reasons, the TOPrS Trustee respectfully requests that its Motion to

17  Dismiss Count II, Count III, and that part of Count I relating  to the 2006 Tax Refund and the

18  First Distribution be granted with prejudice, as well as such other and further relief as this Court

19  deems just and proper.

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

///

1

2     Dated:  March 24, 2011                                Respectfully submitted,

3                                                           ARMSTRONG TEASDALE
                                                            Janet L. Chubb
4                                                           Louis M. Bubala III
                                                            50 West Liberty
5                                                           Suite 950
                                                            Reno, Nevada 89501
6                                                           jchubb@armstrongteasdale.com
                                                            lbubala@armstrongteasdale.com
7                                                           (775) 322-7400 (Telephone)
                                                            (775) 322-9049 (Facsimile)
8
                                                            -and-
9
                                                     By:  _/s/ Andrew I. Silfen_____
10                                                          ARENT FOX LLP
                                                            Andrew I. Silfen, Esq.
11                                                          (Admitted Pro Hac Vice)
                                                            1675 Broadway
12                                                          New York, NY 10019
                                                            (212) 484-3900 (Telephone)
13                                                          silfen.andrew@arentfox.com

14                                                          -and-

15                                                          Nancy S. Heermans, Esq.
                                                            (Admitted Pro Hac Vice)
16                                                          Jeffrey N. Rothleder, Esq.
                                                            (Admitted Pro Hac Vice)
17                                                          1050 Connecticut Ave., N.W.
                                                            Washington, DC 20036
18                                                          (202) 857-6000 (Telephone)
                                                            heermans.nancy@arentfox.com
19                                                          rothleder.jeffrey@arentfox.com

20                                                          *Attorneys for Wilmington Trust Company,*
                                                            *solely in its capacities as Indenture*
21                                                          *Trustee, Delaware Trustee, Institutional*
                                                            *Trustee, Property Trustee and Guarantee*
22                                                          *Trustee for Four Series of TOPrS Trusts*

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

NYC/573676.3                                  - 26 -