E-filed: March 24, 2011

Robert R. Kinas, Esq. (NV Bar 6019)
Patrick G. Byrne, Esq. (NV Bar 7636)
Nishat Baig, Esq. (NV Bar 11047)
SNELL & WILMER L.L.P.
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
(702) 784-5200 (Telephone)
(702) 784-5252 (Facsimile)

Heather Lennox, Esq.
JONES DAY
North Point, 901 Lakeside Avenue
Cleveland, OH 44114
(216) 586-3939 (Telephone)
(216) 579-0212 (Facsimile)

Robert W. Hamilton, Esq.
JONES DAY
325 John H. McConnell Blvd., Suite 600
Columbus, OH 43215
(614) 469-3939 (Telephone)
(614) 461-4198 (Facsimile)

*Counsel to Bank of America, N.A.,
as Debenture Trustee and Institutional Trustee*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re: <br><br> SILVER STATE BANCORP, <br><br> Debtor. | Case No. 09-10069-BAM <br><br> Chapter 7 |
| FEDERAL DEPOSIT INSURANCE CORP., AS RECEIVER FOR SILVER STATE BANK, <br><br> Plaintiff, <br><br> v. <br><br> JAMES F. LISOWSKI, SR., CHAPTER 7 TRUSTEE, et al. <br><br> Defendants. | Adv. Proc. No. 10-01444-BAM <br><br> Hearing Date: May 24, 2011 <br><br> Hearing Time: 11 a.m. <br><br> Judge: Honorable Bruce A. Markell |

/ / /

/ / /

12763915. 1COI-1456275v11

## BANK OF AMERICA'S MOTION TO DISMISS THE AMENDED COMPLAINT AND OBJECTION TO THE FDIC-R'S DISGORGEMENT MOTION

Bank of America, N.A., as successor by merger to LaSalle Bank National Association ("BANA")—solely in its capacity as (a) Debenture Trustee under that certain *Indenture, dated as of July 24, 2007 between Silver State Bancorp and BANA, as trustee* (the "Indenture" and BANA, in such capacity, the "Debenture Trustee"), and (b) Institutional Trustee under that certain *Amended and Restated Declaration of Trust of Silver State Capital Trust VI, dated as of July 24, 2007, among (i) Silver State Bancorp, as Sponsor, (ii) BANA, as Institutional Trustee, (iii) LaSalle National Trust Delaware, as Delaware Trustee, (iv) the Administrators named therein, and (v) the holders from time to time of undivided beneficial interests in the assets of the Trust* (the "Declaration" and, together with the Indenture, "the "BANA Trust Documents," and BANA, in such capacity, the "Institutional Trustee")—hereby moves to dismiss Counts II, III, and those portions of Count I of the Amended Adversary Complaint [Adv. Case 10-01444, Doc. No. 43] (the "Amended Complaint") that seek to vacate the *Order for Approval of Interim Chapter 7 Distribution to Creditors and for Interim Payment of Chapter 7 Trustee's Fees* [Case 09-10069 Doc. No. 103] (the "Distribution Order") and/or to require BANA to return the money the chapter 7 trustee distributed to BANA pursuant to that order. BANA moves to dismiss these counts on two grounds: (i) for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure; and (ii) on the basis that the associated requests for relief are equitably moot.

BANA also hereby objects to the *Motion for Relief from Court's December 22, 2009 Order and Request for Disgorgement of Interim Distributions* [Case 09-10069, Doc. No. 144] (the "Disgorgement Motion"), which was filed by the Federal Deposit Insurance Corporation, as the receiver for Silver State Bank ("FDIC-R"). BANA's motion to dismiss and its objection to the Disgorgement Motion are supported by the Memorandum in Support below and by the *Declaration of Robert W. Kruse III in support of Bank of America's Motion To Dismiss and*

*Objection to FDIC-R's Disgorgement Motion* (the "Kruse Decl."), filed contemporaneously herewith, as well as other papers, pleadings, and documents on file herein.

Dated: March 24, 2011

SNELL & WILMER L.L.P.

/s/ Robert R. Kinas
Robert R. Kinas, Esq.
Patrick G. Byrne, Esq.
Nishat Baig, Esq.
SNELL & WILMER L.L.P.
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
(702) 784-5200 (Telephone)
(702) 784-5252 (Facsimile)

Heather Lennox, Esq.
JONES DAY
North Point, 901 Lakeside Avenue
Cleveland, OH 44114
(216) 586-3939 (Telephone)
(216) 579-0212 (Facsimile)

Robert W. Hamilton, Esq.
JONES DAY
325 John H. McConnell Blvd., Suite 600
Columbus, OH 43215
(614) 469-3939 (Telephone)
(614) 461-4198 (Facsimile)

*Counsel to Bank of America, N.A., as Debenture Trustee and Institutional Trustee*

## MEMORANDUM IN SUPPORT

### I. INTRODUCTION

BANA, solely in its capacity as Debenture Trustee and Institutional Trustee, is a creditor in the above-captioned bankruptcy. On account of its proof of claim, it received a $3.4 million distribution from the estate. BANA held that distribution in trust for over two months after this Court's order authorizing the distribution became final. Then, relying on the finality of that order, BANA distributed all $3.4 million in March 2010, in accordance with the terms of the governing trust documents.

Nine months later (and nearly a full year after the Court entered the order authorizing the $3.4 million distribution), the FDIC-R asked this Court for the first time to claw back from BANA the $3.4 million distribution. The FDIC-R does not dispute it had *actual notice* of the bankruptcy, the chapter 7 trustee's motion seeking authority to distribute the funds, or the ensuing order. Nor does the FDIC-R attempt to explain its year long delay to seek relief. Instead, it primarily argues that this Court lacked jurisdiction to enter the order authorizing the distribution.

In its attempt to turn back the clock, the FDIC-R fundamentally misconstrues the nature of this Court's jurisdiction. The Court did not need *in personam* jurisdiction over the FDIC-R to enter the order authorizing the distribution because it had *in rem* jurisdiction over all property in the debtor's possession. When deciding whether to enter that order, this Court indisputably had subject matter jurisdiction to determine what property should be included or excluded from the debtor's estate. Indeed, the FDIC-R concedes as much by asking the Court now for a declaration that the tax refunds at issue are not property of the estate. For this and other reasons, the FDIC-R request for relief from the Distribution Order fails as a matter of law.

Even if the FDIC-R could prove its entitlement to relief from the Distribution Order, its request that BANA return the $3.4 million must still be denied. The FDIC-R cannot obtain a personal judgment against BANA; it can only require BANA to return the particular funds BANA received in its capacity as Debenture Trustee and Institutional Trustee from the estate. BANA no longer has those particular funds and, thus, there is no relief that can be granted against BANA.

Accordingly, this Court should deny the Disgorgement Motion and dismiss the Amended Complaint to the extent it seeks relief with respect to the funds distributed to BANA pursuant to this Court's Distribution Order.

## II.   BACKGROUND

BANA has participated in the bankruptcy of Silver State Bancorp (the "Debtor" or "Silver State") solely in its capacity as trustee with respect to certain debt securities issued by the Debtor pursuant to the Indenture. Other than filing a proof of claim based on those securities and

receiving a distribution on account of that claim, BANA did not otherwise participate in this bankruptcy until being named in the present adversary proceeding.

### A. Silver State's Debentures.

Pursuant to the Indenture, Silver State issued its Junior Subordinated Debt Securities due September 15, 2037 (the "Debentures") in the aggregate principal amount of $30,928,000.00. (Kruse Decl. ¶ 3; Indenture § 2.01.) Contemporaneously therewith, the Declaration established the Trust, to which Silver State then sold all the Debentures. (Kruse Decl. ¶ 3.)

To fund the purchase of the Debentures, the Trust issued certain securities: (i) 30,000 trust preferred securities with an aggregate liquidation amount of $30,000,000.00 (the "Capital Securities"); and (ii) 928 trust common securities with an aggregate liquidation amount of $928,000.00 (the "Common Securities"). (Kruse Decl. ¶ 4; Declaration § 6.1(a) and Annex I.) The Trust then sold the Capital Securities in a private placement for $30,000,000.00. The Trust paid Silver State for the Debentures with the proceeds of the private placement and by delivering to Silver State the Common Securities. (Kruse Decl. ¶ 5.)

Silver State is obligated to pay interest quarterly and principal upon maturity to the Debenture holder. (Kruse Decl. ¶ 6; Indenture §§ 1.01, 2.08, 3.01.) Silver State discharges these obligations by making payment to the Debenture Trustee and the Institutional Trustee. (Kruse Decl. ¶ 6; Indenture §§ 3.01, 3.04(e).) All payments that Silver State makes on account of its obligations under the BANA Trust Documents to the Trust are made to BANA solely in its capacity as Debenture Trustee and Institutional Trustee and not for BANA's own account. (Kruse Decl. ¶ 7; Indenture §§ 5.02, 5.03, 6.05; Declaration §§ 2.6(a)(ii), 2.8, 9.4 & 9.6.) BANA maintains a segregated bank account (the "Trust Account") for handling all money received in its capacity as Debenture Trustee and Institutional Trustee. (Kruse Decl. ¶ 7; Declaration § 2.8(c).)

The Institutional Trustee, after making deductions permitted under the BANA Trust Documents, pays the money received from Silver State to the record holder of the Capital Securities (the "Record Holder"), which is CEDE & Co., as nominee for the Depository Trust Corporation. (Kruse Decl. ¶ 8; Declaration §§ 2.6(a)(ii), 2.8, 9.4 & 9.6.) After that, BANA has

no further role in the distribution of Silver State's payments. The Record Holder distributes the funds, pursuant to its internal protocols, to its participants, who are generally intermediaries, such as banks, brokers, agents or nominees. Those participants then allocate and distribute the payments to the beneficial holders of the Capital Securities (the "Beneficial Holders"). (Kruse Decl.¶ 9.) BANA does not know the identity of the Beneficial Holders. (Id. ¶ 10.)

### B.    Silver State's Bankruptcy.

On September 5, 2008, the Nevada Department of Business and Industry closed Silver State Bank (the "Bank") and appointed the FDIC-R as the receiver for the Bank. (Amended Complaint ¶ 12.) The Bank is a wholly-owned subsidiary of the Debtor. (See id. ¶ 1.)

Four months later, on January 6, 2009, the Debtor filed a voluntary petition for relief under chapter 7 of Title of 11 of the United States Code. (Id. ¶ 25); [Case 09-10069, Doc. No. 1]. On June 17, 2009, the Trustee filed the *Notice of Assets & Notice to File Claim* (the "Asset Notice") providing notice that all proofs of claim had to be filed on or before September 21, 2009 (the "Bar Date"). [Case 09-10069, Doc. No. 24.] The bankruptcy clerk, on June 20, 2009, mailed the Asset Notice to the FDIC-R. [See Case 09-10069, Doc. No. 25.]

Silver State's filing of its bankruptcy petition constituted an event of default under both the Indenture and Declaration; as a result, the entire principal amount of the Debentures and any premium interest accrued, but unpaid, became immediately due and payable without further action. (Kruse Decl. ¶ 12; Indenture § 5.01(f); Declaration § 1.01.) Accordingly, on September 4, 2009, BANA, solely in its capacity as Debenture Trustee and Institutional Trustee, filed proof of claim No. 15 in the approximate amount of $31,622,975.79 (consisting of (i) approximately $30,928,000.00 in principal amount of Debentures outstanding and (ii) approximately $694,975.79 in accrued but unpaid interest) based upon obligations that the Debtor owed to the Debenture Trustee and the Institutional Trustee, for the benefit of the holders under the BANA Trust Documents (the "BANA Trust Claim."). (Kruse Decl. ¶ 13.) The FDIC-R did not file a proof of claim. [See Case No. 09-10069, Claims Register.]

### C. The First Distribution Motion and the Distribution Order.

Two months after the Bar Date, on November 19, 2009, the chapter 7 trustee filed the Motion for Interim Chapter 7 Distribution to Creditors and Application for Interim Payment [Case 09-10069, Doc No. 81] (the "First Distribution Motion"), seeking to distribute to the estate's creditors an $8.3 million tax refund (the "2006 Tax Refund"), which the chapter 7 trustee had received on behalf of the Debtor from the IRS. (Amended Complaint ¶ 27.) The chapter 7 trustee served the First Distribution Motion on the FDIC-R, but the FDIC-R did not object. (Id. ¶¶ 28, 30.) On December 22, 2009, the Court entered its *Order for Approval of Interim Chapter 7 Distribution to Creditors and for Interim Payment of Chapter 7 Trustee's Fees* [Case 09-10069, Doc. No. 103] (the "Distribution Order"). (Id. ¶ 31) Pursuant to the Distribution Order, the chapter 7 trustee, among other things, sent a $3,440,174.90 check to BANA, solely in its capacity as Debenture Trustee and Institutional Trustee, on account of the BANA Trust Claim. (See id. ¶ 32; Kruse Decl. ¶ 15.) BANA deposited the check in the Trust Account. (Kruse Decl. ¶ 15.)

On January 5, 2010, the Distribution Order became final. See Fed. R. Bankr. P. 8001 & 8002. Under the BANA Trust Documents, the Debenture Trustee and the Institutional Trustee are entitled to conclusively rely on the Distribution Order. (See Kruse Decl. ¶ 16; Indenture § 15.04; Declaration § 2.10(a).) Two months later, on March 8, 2010, BANA, solely in its capacity as Debenture Trustee and Institutional Trustee, transferred from the Trust Account to the Record Holder the entire $3,440,174.90 distribution. (Kruse Decl. ¶ 17.) Currently, BANA holds no assets (other than the Debentures) in its capacity as Debenture Trustee or Institutional Trustee. The Trust Account has a zero balance. (Id. ¶ 18.)

### D. FDIC-R's Disgorgement Motion and Adversary Proceeding.

On July 20, 2010, the chapter 7 trustee filed its *Motion for Second Interim Chapter 7 Distribution to Creditors and Application for Interim Payment* [Case 09-10069, Doc No. 123] (the "Second Distribution Motion"), seeking authorization to distribute a $16.3 million tax refund (the "2007 Tax Refund"), which the chapter 7 trustee had received on behalf of the Debtor from the IRS. (Amended Complaint ¶ 34.) The FDIC-R filed its Opposition to the Second

Distribution Motion [Case 09-10069, Doc. No. 129] on August 17, 2010. (Id. ¶ 35.) The FDIC-R litigated the Second Distribution Motion for four months. It appeared at a hearing and filed a supplemental brief. [See Case 09-10069, Doc. Nos. 136, 140 & 141.] In all that time, it never claimed—not once—that it was not properly served with the First Distribution Motion, even though the chapter 7 trustee repeatedly argued that the FDIC-R was estopped from opposing the Second Distribution Motion because it failed to object to First Distribution Motion after being properly served. [See Case 09-10069, Doc. Nos. 132, 135, 136 & 139.]

Then, nearly a year after the Court entered the Distribution Order, the FDIC-R filed its Disgorgement Motion, in which it argued—for the first time—that it was not properly served with the First Distribution Motion.

On December 23, 2010, the FDIC-R filed the above-captioned adversary proceeding. On January 31, 2011, the FDIC-R filed the Amended Complaint, which made clear that the FDIC-R was suing certain defendants, including BANA, only in their capacity as trustees. (See Amended Complaint at 1-2.) The Court consolidated the Disgorgement Motion and this Adversary Proceeding on February 4, 2011. [See Case 09-10069, Doc. No. 206; Adv. 10-01444, Doc. No. 48.] In essence, the Amended Complaint seeks two forms of relief: (1) like the Disgorgement Motion, it seeks to vacate the Distribution Order and the return of funds distributed pursuant to it; and (2) it seeks a determination that the tax refunds are property of the Bank and not property of the Debtor's estate. (See generally Amended Complaint.)

BANA's current Motion to Dismiss and Objection to the Disgorgement Motion are directed only at the first of these two forms of requested relief. BANA reserves all of its rights to dispute that the tax refunds are property of the Bank. Under the Tax Allocation Agreement, Silver State was obligated to pay the Bank from Silver State's own funds the amounts that the IRS would have been obligated to pay to the Bank before Silver State received the refund from the IRS. [See Case 09-10069, Doc. No. 141, Ex. 1 ¶ 3.] This is a classic debtor-creditor relationship. The Bank was not entitled to specific funds and instead had only a general money claim against Silver State. But at present, BANA only asks the Court to dismiss the FDIC-R's

belated attempt to undo the Court's fifteen-month-old Distribution Order. In reliance on that order, BANA distributed the funds it received, in its capacity as Debenture Trustee and Institutional Trustee, to the Record Holder more than a year ago. The funds are gone, and BANA has no other trust funds in its possession. (See Kruse Decl. ¶ 18.)

### III. ARGUMENT

#### A. BANA Adopts The Arguments Of The Wilmington Trust Company.

Wilmington Trust Company ("Wilmington") raises a number of arguments in its Initial Omnibus Opposition [Case 09-10069, Doc. No. 172] and its Motion to Dismiss [Case 10-01444, Doc. No. 66] (collectively, the "Wilmington Briefs") that require denial of the Disgorgement Motion and dismissal of the Amended Complaint to the extent it seeks relief with respect to the 2006 Tax Refund and the Distribution Order. BANA hereby adopts and incorporates by reference all the arguments raised in the Wilmington Briefs as if fully set forth herein. As Wilmington more fully explains in the Wilmington Briefs, the FDIC-R's requests for relief with respect to the 2006 Tax Refund and the Distribution Order must be denied for several reasons.

*First*, under the doctrine of claim preclusion, parties are precluded from relitigating issues that were or could have been raised in that action. The FDIC-R was a party with respect to the Distribution Order. See Sanders Confectionery Prods, Inc. v. Heller Fin., Inc., 973 F.2d 474, 480-81 (6th Cir. 1992). The Distribution Order became a final order more than a year ago. See Fed. R. Bankr. P. 8002. The claims relating to the 2006 Tax Refund are claims that could have been raised when this Court considered the First Distribution Motion. See Aldridge v. United States Dep't of Veterans' Affairs, No. CV-N-04-0016, 2004 U.S. Dist. LEXIS 28358, *4 (D. Nev. June 21, 2004). Accordingly, *res judicata* precludes the FDIC-R from bringing those claims in the Amended Complaint that relate to the 2006 Tax Refund.

*Second*, the FDIC-R cannot meet its substantial burden for obtaining relief under Rule 60(b) because it had *actual notice* of the First Distribution Motion. By its own admission, the FDIC-R received notice of the First Distribution Motion and the Distribution Order, and nonetheless elected to wait nearly a year to seek relief under Rule 60(b). [See Case 09-10069,

Doc. No. 144, ¶ 10 & p.7 n.3.] Accordingly, the FDIC-R must bear the consequences of its own delay, and as a result, it cannot meet its burden under Rule 60(b). See SEC v. Internet Solutions for Bus. Inc., 509 F.3d 1161, 1166 (9th Cir. 2007).

*Third*, the chapter 7 trustee was not required to serve the FDIC-R under Bankruptcy Rule 7004 because the First Distribution Motion was not a contested matter. Even if service in accordance with Bankruptcy Rule 7004 were required, the FDIC-R, in its role as receiver, is not the Government and, thus, service under Rule 7004(b)(3) is all that is necessary as the FDIC-R stands in the shoes of the Bank. See O'Melveny & Myers v. FDIC, 512 U.S. 79, 85 (1994) (when acting as a receiver, "the FDIC is not the United States."). Accordingly, the chapter 7 trustee properly served the FDIC-R with the First Distribution Motion.

*Fourth*, the FDIC-R has failed to allege the extraordinary circumstances necessary to obtain Rule 60(b)(6) relief. Any purported justification for the FDIC-R's delay in seeking Rule 60(b) relief must be balanced against the interests of finality and resulting prejudice to other parties. See Preminger v. Shinseki, No. 04-2012, 2010 WL 2077151, *3 (N.D.Cal. May 21, 2010). This balance clearly weighs in favor of BANA, which relied on the Distribution Order and waited until the appeal period had passed before remitting the distribution to the Record Holder, which has most likely caused the funds to be distributed to numerous Beneficial Holders. As a result of the FDIC-R's unjustified inaction and delay, the funds are now long gone.

*Fifth*, the FDIC has not alleged any "grave miscarriage of justice" necessary to obtain relief under Rule 60(d), which permits a court to "entertain an independent action to relieve a party from a judgment, order, or proceeding." Fed. R. Civ. P. 60(d). Indeed, any fault here lies squarely with the FDIC-R.

*Sixth*, the distribution process cannot be undone because such relief is equitably moot. Under the equitable mootness doctrine, a court cannot reverse an order when subsequent events make it impossible to fashion effective relief. See In re USA Commercial Mortg. Co., No. 2:07-CV-00072, 2007 WL 2571947, *9 (D. Nev. Aug. 29, 2007). Further, even where relief is possible, courts will refuse to grant relief on equitable grounds when the moving party failed to

pursue its available remedies. <u>Trone v. Roberts Farms, Inc. (In re Roberts Farms, Inc.)</u>, 652 F.2d 793, 798 (9th Cir. 1981). Thus, courts employ the doctrine of equitable mootness to prohibit disgorgement of payments made by a debtor to its creditors in circumstances involving complex transactions that practically cannot be unwound. <u>Id.</u> at 797-98. Here, no effective relief can be granted; even if it could, it should not because the FDIC-R failed to pursue its remedies.

*Seventh*, the FDIC-R has failed to plead sufficient facts to satisfy the standard for injunctive relief. Indeed, the Amended Complaint contains no allegation of irreparable harm or that the issuance of an injunction favors the public interest.

Accordingly, Count III of the Amended Complaint fails as a matter of law. In addition to the above arguments, each of which is detailed in the Wilmington Briefs, BANA submits below two additional arguments in support of its objection to the Disgorgement Motion and its motion to dismiss the Amended Complaint.

**B.     The FDIC-R Is Not Entitled To Relief Under Rule 60(b)(4) Because The Distribution Order Is Not Void.**

Rule 60(b) of the Federal Rules of Civil Procedure, which is made applicable to this proceeding pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure, provides in part that upon a motion and just terms, a court may relieve a party from a final order if "(4) the judgment is void ...." Fed. R. Civ. P. 60(b). No basis exists to grant the relief requested by the FDIC-R under Rule 60(b)(4) in this case because the Distribution Order is not "void."

"A void judgment is a legal nullity." <u>United Student Aid Funds, Inc. v. Espinosa</u>, 130 S.Ct. 1367, 1377 (2010). Such an order "is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final." <u>Id.</u> According to the U.S. Supreme Court, the list of these fundamental infirmities is "exceedingly short." <u>Id.</u> ("Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard."); <u>see</u> <u>Jones v. Giles</u>, 741 F.2d 245, 248 (9th Cir. 1984) ("the concept of void judgments is narrowly construed") (citing <u>Lubben v. Selective Serv. Sys. Local Bd. 27</u>, 453 F.2d 645, 649 (1st Cir. 1972) ("the concept of void judgments is narrowly construed ... [and

o]nly in the rare instance of a clear usurpation of power will a judgment be rendered void.")); In re Whitney-Forbes, Inc., 770 F.2d 692, 696-97 (7th Cir. 1985) (Rule 60(b)(4) requires "exceptional circumstances" and "is construed very narrowly").

To prevail under Rule 60(b)(4), the FDIC-R must demonstrate either (i) that the Distribution Order violated the FDIC-R's due process rights, (ii) this Court lacked subject matter jurisdiction to decide the motion, or (iii) this Court had *neither* personal jurisdiction over the FDIC-R nor *in rem* jurisdiction to decide the First Distribution Motion. See Espinosa, 130 S.Ct. at 1377. The FDIC-R cannot demonstrate that any of these three infirmities exist here.

### 1. The FDIC-R's Due Process Rights Were Not Violated.

The FDIC-R does not assert that the entry of the Distribution Order violated its due process rights. Nor could it. The FDIC-R concedes it received *actual notice* of the First Distribution Motion, and such actual notice satisfied its due process rights. See, e.g., Espinosa, 130 S.Ct. at 1378 ("Here, United received *actual* notice of the filing and contents of Espinosa's plan. This more than satisfied United's due process rights."), aff'g, 553 F.3d 1193, 1203 (9th Cir. 2008) (Kozinksi, J.) ("[A]ctual notice satisfies due process. We find the argument that the Constitution requires something *more* than actual notice strained to the point of the bizarre.").

### 2. The Court Had Subject Matter Jurisdiction.

Any suggestion that this Court does not have subject matter jurisdiction to hear a motion to distribute monies held by a debtor's estate is frivolous. Distributions of property from the estate are core to this proceeding. Moreover, "determining the nature and extent of property of the estate is also a fundamental function of a bankruptcy court" and is "fundamental to the administration of a bankruptcy case." John Hancock Mut. Life Ins. Co. v. Watson (In re Kincaid), 917 F.2d 1162, 1165 (9th Cir. 1990). Accordingly, "[s]ince an action to obtain property of the estate would necessarily involve a determination regarding 'the nature and extent of property of the estate,' the action would also be a matter 'concerning the administration of the

///

///

estate,' and, therefore, a core proceeding." Id. (citing 28 U.S.C. § 157(b)(2)(A)). Consequently, this Court had subject matter jurisdiction to enter the Distribution Order.[1]

### 3. The Court Had *In Rem* Jurisdiction.

The FDIC-R asserts that a defect in service of process renders the Distribution Order void because that defect prevented this Court from acquiring the *in personam* jurisdiction over the FDIC-R that it now claims was necessary to issue the Distribution Order. This argument is both incorrect and misguided. As an initial matter, notice to the FDIC-R was appropriate, as detailed in part III.A *supra*. Moreover, and in any event, *in personam* jurisdiction is not necessary in a case, such as this one, where the Court is invoking its *in rem* jurisdiction. See Tenn. Student Assistance Corp. v. Hood, 541 U.S. 440, 453 (2004) (noting *in personam* jurisdiction is immaterial if the court is exercising its *in rem* jurisdiction); see also Espinosa, 130 S.Ct. at 1378 (failure to comply with Bankruptcy Rule 7004(b)(3) did not render order void); U.S. v. Gurley, 434 F.3d 1064, 1068 (8th Cir. 2006) ("Because it was an *in rem* proceeding, there was no need to establish personal jurisdiction over Gurley.").

The FDIC-R's position represents a fundamental mischaracterization of the nature of bankruptcy jurisdiction. "Bankruptcy jurisdiction, at its core, is in rem." Cent. Va. Cmty. Coll. v. Katz, 546 U.S. 356, 362 (2006) (citing Gardner v. New Jersey, 329 U.S. 565, 574 (1947) ("The whole process of proof, allowance, and distribution is, shortly speaking, an adjudication of interests claimed in a *res*.")). As has been true since the 18th century, "the jurisdiction of courts adjudicating rights in the bankrupt estate included the power to issue compulsory orders to facilitate the *administration and distribution of the res*." Katz, 546 U.S. at 362 (emphasis added); Gardner, 329 U.S. at 577 ("[Bankruptcy] jurisdiction is not limited to the prevention of interference with the use of the property by the trustee; it 'extends also to the adjudication of questions respecting the title.'" (citations omitted)), reh'g denied, 330 U.S. 853 (1947).

---

[1] It is telling that the FDIC-R did not question this Court's subject matter jurisdiction when contesting the Second Distribution Motion. Moreover, the FDIC-R itself commenced the instant action *in this Court* to determine the status of the Tax Refunds and is thus obligated to allege that this Court has subject matter jurisdiction to make that determination. Indeed, any suggestion that this Court did not have subject matter jurisdiction with respect to the First Distribution Motion, if valid, would also—by the same logic—deprive this Court of subject matter jurisdiction to hear the FDIC-R's claim for affirmative relief against BANA.

This Court's *in rem* jurisdiction allows it to make determinations with respect to property of and distributions from the estate without *in personam* jurisdiction over creditors. See Hood, 541 U.S. at 453. This concept is essential to our bankruptcy system. "A bankruptcy court is able to provide the debtor a fresh start in this manner, despite the lack of participation of all of his creditors, because the court's jurisdiction is premised on the debtor and his estate, and not on the creditors." Id. at 447. Because the First Distribution Motion invoked this Court's *in rem* jurisdiction, there was no need to acquire *in personam* jurisdiction over the FDIC-R. See id. at 453 ("jurisdiction over the person is irrelevant if the court has jurisdiction over the property"); U.S. v. One Oil Painting Entitled "Femme en Blanc" by Pablo Picasso, 362 F. Supp. 2d 1175, 1183 (C.D. Cal. 2005) (*in rem* jurisdiction is dependent on the location of the property, not on the ability to secure personal jurisdiction); accord George B. Fraser, Jr., Actions in Rem, 34 CORNELL L.Q. 29, 40 (1948) ("Notice of actions in rem is to be distinguished from service of process in actions in personam because notice may be given a person even though he is outside the territorial limits of the court, since jurisdiction over the person is not necessary in an in rem action.").

Although the FDIC-R relies on two cases to support its position that the Distribution Order is "void" due to a lack of *in personam* jurisdiction, neither case applies here. The FDIC-R cites In re Partial Hospital Institute of America, 281 B.R. 728 (Bankr. S.D. Ala. 2001) to support the proposition that "this Court lacked jurisdiction to decide the merits of the Trustee's First Distribution Motion because the Trustee did not properly serve the Motion on the FDIC-R." [Case 09-10069, Doc. No. 144, p.5]. However, the court in Partial Hospital expressly determined in that case "the order is not void for lack of personal jurisdiction." Id. at 732.

The FDIC-R also relies on Scott v. U.S. (In re Scott), 437 B.R. 376 (9th Cir. B.A.P. 2010). Scott did not deal with Rule 60 at all. Instead, Scott involved a direct appeal of a denial of a *pro se* debtor's attempt to require the IRS to pay the debtor a tax refund and to direct the IRS to remove tax liens. The appellate panel concluded that the debtor had not complied with the rules for service of process and that the bankruptcy court had no jurisdiction to grant the relief requested. The Supreme Court has made clear that personal jurisdiction over a creditor is

necessary when the estate seeks to recover money *in the possession of that creditor*, and not when the property at issue is in possession of the estate. Scott involved the former situation. The debtor in Scott sought to recover money *in the possession of the IRS;* thus, proper service on the IRS was necessary. In contrast, *in personam* jurisdiction was not necessary with respect to the Distribution Order here because such order did not seek to impose personal liability on the FDIC-R and instead only implicated this Court's *in rem* jurisdiction. See Hood, 541 U.S. at 448 ("A bankruptcy court's *in rem* jurisdiction permits it to 'determin[e] all claims that anyone, whether named in the action or not, has to the property or thing in question[']. . . . . Because the court's jurisdiction is premised on the res, however, a nonparticipating creditor cannot be subjected to personal liability.") (citation omitted); see also Katz, 546 U.S. at 371-72 (discussing whether a preference action is characterized as *in rem* or whether it requires *in personam* process).

In this case, this Court had *in rem* jurisdiction to enter the Distribution Order because the chapter 7 trustee possessed the 2006 Tax Refund on behalf of the Debtor's estate. Subject matter jurisdiction unquestionably existed. And, the FDIC-R cannot allege that its due process rights were violated since it received *actual notice* of the First Distribution Motion. Therefore, the Distribution Order is not "void" for purposes of Rule 60(b)(4).

### C.  The FDIC-R Cannot Recover From BANA Because BANA No Longer Controls The Funds At Issue.

The FDIC-R seeks to require BANA to return money that BANA received solely in its capacity as Debenture Trustee and Indenture Trustee. But BANA currently holds no assets (other than the Debentures) in those capacities. (Kruse Decl. ¶ 18.) Indeed, the FDIC-R has sued BANA solely in its capacity as Debenture Trustee and Institutional Trustee; the FDIC-R cannot impose personal liability on BANA to "return" $3.4 million to the estate for two reasons.

#### 1.  State Law Shields BANA From Personal Liability.

The Ninth Circuit has held that state trust law determines whether a trustee can be held personally liable in federal court. See Biltmore Assocs., LLC v. Twin City Fire Ins. Co., 572

F.3d 663 (9th Cir. 2009). Here, applicable state law shields BANA from personal liability. Because BANA possesses no trust funds, the FDIC-R cannot recover anything from BANA.

In Biltmore, the Ninth Circuit reversed a finding that a plaintiff trustee was personally liable for attorneys' fees awarded to the defendants. See 572 F.3d at 675-77. After dismissing the complaint filed by a trustee of a chapter 11 creditor's trust ("Biltmore"), the district court had awarded attorneys' fees to the defendants and against Biltmore personally, under an Arizona statute adopting the English rule for contract cases. Id. at 667. The Ninth Circuit affirmed the dismissal, but remanded the award of attorneys' fees "to clarify that Biltmore is not personally liable." Id. Applying Arizona law, the court held Biltmore could not be held personally liable unless the party seeking to impose such liability demonstrates that the trustee intentionally or negligently acted or failed to act in a manner that established personal fault. Id. at 676-77 Because the "costs award against Biltmore, acting as the creditor's committee trustee, was an ordinary cost, imposed on account of the statutory fee shifting provision in contract cases," the Court held "Biltmore is entitled not to be liable for the money personally." Id. at 677.

Here, BANA has participated in this bankruptcy solely in its capacity as Debenture Trustee and Institutional Trustee. Two states' laws define the scope of BANA's personal liability. The Indenture is governed by New York law. (Indenture § 14.05.) The Declaration is governed by Delaware law. (Declaration § 13.2.) Both shield BANA from personal liability.

The Declaration creates a Delaware Statutory Trust under 12 Del. Code § 3801 et seq. (See Declaration at pp. 1, 8.) The Delaware code exculpates a trustee of a Delaware Statutory Trust from personal liability to anyone other than the trust and its beneficial holders, "except to the extent otherwise provided in the governing instrument." 12 Del. Code § 3803(b). The "governing instrument" here makes clear that BANA is not to be held personally liable:

> It is expressly understood and agreed by the parties hereto that insofar as any document, agreement or certificate is executed on behalf of the Trust by any Trustee (i) such document, agreement or certificate is executed and delivered by such Trustee, not in its individual capacity, but solely as Trustee under this Declaration in the exercise of the powers and authority conferred and vested in it, (ii) each of the representations, undertakings and agreement made on the part of the Trust is made and intended not as representations,

> warranties, covenants, undertakings and agreements by any Trustee in its individual capacity, but is made and intended for the purpose of binding only the Trust and (iii) **under no circumstances shall any Trustee in its individual capacity be personally liable for the payment of any indebtedness or expenses of the Trust** or be liable for the breach or failure of any obligation, representation, warranty or covenant made or undertaken by the Trust under this Declaration or any other document, agreement or certificate.

Declaration § 9.2(c) (emphasis added). The Declaration also provides "the Institutional Trustee may conclusively rely and shall fully be protected in acting or refraining from acting in good faith upon any ... order ... believed by it to be genuine." (Declaration § 2.10(a).) Thus, Delaware law shields BANA from personal liability for all actions taken in reliance on the Distribution Order.

New York law similarly shields BANA from personal liability. *First*, under New York law, a trustee appearing in litigation in its representative capacity cannot be held personally liable for its actions in that litigation unless it can be shown to be somehow personally at fault. See Skolnick v. Goldberg, 291 A.D.2d 274, 275 (N.Y. App. Div. 2002). In Skolnick, the New York appellate court held an executrix, a fiduciary, cannot be personally liable for an attorneys' fees award when she brings in her representative capacity a suit that falls within the scope of her responsibilities. Id. The Ninth Circuit found Skolnick was in accord with Arizona's law that a trustee is not personally liable unless it is established that the trustee bears some personal responsibility. Biltmore, 572 F.3d at 677 n.58. Here, BANA has participated in this bankruptcy solely in its representative capacity, and there is no allegation it has done anything wrong. In these circumstances, the law does not permit any party to obtain an order compelling BANA to "return" the $3.4 million from its personal assets.

*Second*, under New York law, a trustee is not personally liable if the terms of the relevant documents exclude personal liability for the trustee's breach. East River Savings Bank v. Samuels, 31 N.E.2d 906, 910 (1940). As another New York court explained, "an express disclaimer is not essential to a finding that a trustee is not personally liable" under the East River standard. Sisler v. Security Pacific Bus. Credit, Inc., 201 A.D.2d 216, 221 (N.Y. App. Div. 1994). It was sufficient in Sisler, for example, that the assignment at issue "contains a recital of the trust entities as parties to the assignment, identifies each as an '[a]ssignor', 'acting through'

Robbins and appellant, 'the [t]rustees of both the [t]rusts', and the signing is in the name of each trust by the trustees, including appellant, as 'Trustee'." Id. at 220 (alterations in original); accord Jet Star Enters. Ltd. v. CS Aviation Servs., No. 01 Civ. 6590, 2004 WL 350733, at *7-8 (S.D.N.Y. Feb. 25, 2004) (modifying default judgment against bank in its individual capacity to one in its representative capacity when the opening paragraph of the agreement specified the bank entered the agreement "not in its individual capacity, but solely as owner trustee") (applying New York law). Here, the statements and disclosures in the BANA Trust Documents and the BANA Trust Claim are more than sufficient to put all parties on notice that BANA was acting solely in its representative capacity.

Accordingly, applicable state law does not permit BANA to be held personally liable for the return of the funds it received in its capacity as Debenture Trustee and Institutional Trustee.

### 2. BANA Cannot Disgorge Funds It No Longer Has.

Because the restitution requested by the FDIC-R is an equitable remedy, it will only lie against particular funds or property in BANA's possession. See Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213-214 (2002). As the funds that the FDIC-R seeks to recover are no longer in BANA's possession, the FDIC-R's request for restitution from BANA must be denied.

Disgorgement does not have a clearly defined meaning in the law; instead, it is "a term of modern vintage," which means different things in different contexts. See SEC v. Cavanagh, 445 F.3d 105, 116 n.24 (2d Cir. 2006); see also id. at 119 (noting disgorgement can refer to the "remedies of accounting, constructive trust, and restitution"); SEC v. R. J. Allen & Assocs., Inc., 386 F. Supp. 866, 880 (S.D. Fla. 1974) ("equat[ing] disgorgement with restitution and recoupment"). Here, the FDIC-R asks for an order compelling BANA to return the $3.4 million BANA received pursuant to the Distribution Order. This is a request for restitution. See Black's Law Dictionary (9th ed. 2009) (defining restitution as a "body of substantive law in which liability is based not on tort or contract but on the defendant's unjust enrichment" and as a "[r]eturn or restoration of some specific thing to its rightful owner or status").

When a bankruptcy court orders disgorgement, it is generally exercising its equitable power to order restitution. Contrary to the FDIC R's suggestion in paragraph 42 of the Amended Complaint, section 502(j) of the Bankruptcy Code does not provide for the recovery of money distributed from the estate. It merely states that it does not "alter or modify" other such rights a bankruptcy trustee might have. 11 U.S.C. § 502(j). Other than section 330(b)(5)'s authorization to recover interim fees paid to estate professionals, however, the Bankruptcy Code does not provide a statutory remedy to recover money distributed from the estate pursuant to an order of the bankruptcy court. Instead, courts order disgorgement pursuant to their inherent equitable powers or the equitable powers preserved under section 105(a) of the Bankruptcy Code. See, e.g., Matz v. Hoseman, 197 B.R. 635, 640 (N.D. Ill. 1996) (noting a bankruptcy court's power to disgorge professional fees stems from either section 105(a) or its inherent powers); In re Channel Master Holdings, Inc., 309 B.R. 855, 860 (Bankr. D. Del. 2004) (inherent powers); Guinee v. Toombs (In re Kearing), 170 B.R. 1, 7 (Bankr. D.C. 1994) (section 105(a)).

To be entitled to the relief it seeks against BANA, therefore, the FDIC-R must satisfy the requirements of restitution in equity. "[F]or restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff *particular funds or property in the defendant's possession*." Great-West, 534 U.S. at 214 (emphasis added). The "particular funds" the FDIC-R seeks from BANA—the $3.4 million the chapter 7 trustee sent to BANA in its capacity as Debenture Trustee and Institutional Trustee—are gone, however.

As the Supreme Court explained, a plaintiff ordinarily seeks restitution in equity "in the form of a constructive trust or an equitable lien." Great-West, 534 U.S. at 213. Courts routinely find that claims for constructive trusts fail as matter of law when the particular assets over which a plaintiff seeks to impose a constructive trust are no longer in the defendant's possession. See, e.g., Watts v. Stephenson (In re MJK Clearing, Inc.), 371 F.3d 397, 401-03 (8th Cir. 2004) (holding plaintiff was not entitled to a constructive trust when it failed to show the trust funds were in the defendant's possession); Conn. Gen. Life Ins. Co. v. Univ. Ins. Co., 838 F.2d 612, 619 (1st Cir. 1988) (same); In re United Cigar Stores Co. of Am., 70 F.2d 313, 316 (2d Cir. 1934)

("There can be no recovery, however, where all that can be shown is enrichment of the trustee. It [the *res*] must be clearly traced and identified in specific property.").[2]

BANA no longer possesses the $3.4 million payment the chapter 7 trustee sent to BANA in its capacity as Debenture Trustee and Indenture Trustee. (Kruse Decl. ¶¶ 17, 18). The FDIC-R cannot satisfy the requirements for restitution, and its disgorgement claim therefore fails as a matter of law.

## IV.   CONCLUSION

For the foregoing reasons, the Disgorgement Motion should be denied, and the claims in the Amended Complaint should be dismissed to the extent they seek an order vacating the Distribution Order and requiring BANA to "return" the money received pursuant to that order.

Dated: March 24, 2011

SNELL & WILMER L.L.P.

/s/ Robert R. Kinas
Robert R. Kinas, Esq.
Patrick G. Byrne, Esq.
Nishat Baig, Esq.
SNELL & WILMER L.L.P.
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
(702) 784-5200 (Telephone)
(702) 784-5252 (Facsimile)

Heather Lennox, Esq.
JONES DAY
North Point, 901 Lakeside Avenue
Cleveland, OH 44114
(216) 586-3939 (Telephone)
(216) 579-0212 (Facsimile)

Robert W. Hamilton, Esq.
JONES DAY
325 John H. McConnell Blvd., Suite 600
Columbus, OH 43215
(614) 469-3939 (Telephone)
(614) 461-4198 (Facsimile)
*Counsel to Bank of America, N.A., as Debenture Trustee and Institutional Trustee*

---

[2] Thus, courts require the SEC to show funds that it seeks to disgorge from relief defendants—third-party transferees of ill-gotten gains—are the *particular* ill-gotten gains. See SEC v. Colello, 139 F.3d 674, 678 (9th Cir. 1998) (affirming disgorgement order against relief defendant when he "refused to give information necessary to determine whether he still possessed any of the funds or whether he had a legitimate claim to them"); SEC v. Cherif, 933 F.2d 403, 416 n.15 (7th Cir. 1991) (noting any personal funds of a relief defendant "must be excluded from the freeze order," which froze assets that might be subject to disgorgement). SEC disgorgement is a form of equitable disgorgement. See Cavanagh, 445 F.3d 105.

COI-1456275v11
12763915.1

20